[No. B185709. Second Dist., Div. Six. Sept. 19, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN DEWAYNE FOSTER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the text which is identified between double brackets (e.g., [[/]]), and parts II., III. & IV.

## COUNSEL

Susan Pochter Stone, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—Defendant wishes to dissuade a victim from testifying against him in a criminal proceeding. He asks a third party to tell the victim not to testify against him. The third party agrees to do so, but does not relate defendant's message to the victim. Here we hold sufficient evidence supports defendant's conviction of Penal Code section 136.1, subdivision (a)(2).[1]

Kevin Dewayne Foster appeals a judgment following his conviction of, among other things, assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), count 1, a felony. He also appeals his conviction of attempting to dissuade a witness from testifying (§ 136.1, subd. (a)(2)), count 2, a felony.

[[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

██ We conclude, among other things, that: (1) Foster's phone call asking a third party to deliver a message to a witness that she should not testify against him was an attempt to dissuade a witness under section 136.1, subdivision (a)(2); (2) giving an unnecessary CALJIC No. 2.61 instruction to jurors was not prejudicial error; (3) the court properly applied section 1170.15 in sentencing Foster; and (4) the court did not violate *Cunningham* by

---

[1] All statutory references are to the Penal Code.
* See footnote, *ante*, page 331.

imposing an upper term for assault. (*Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856].) We affirm.

## FACTS

On the evening of March 11, 2004, Genevieve S., Foster's girlfriend, met Foster. They went to the park and later returned to a trailer where Foster was staying. Foster hit Genevieve in the mouth with a flashlight. She was bleeding and taken to a hospital. Foster was arrested.

While in jail, Foster made phone calls to his friend, Gladys Waylon Buchanan. Buchanan also knew Genevieve. In one call, Foster told Buchanan that he had been involved in a fight with Genevieve. Buchanan said, "[Y]ou must of hurt each other." Foster responded, "Yeah, we did, we both went to the hospital."

In a subsequent call, Foster told Buchanan that Genevieve "told on [him]" and "got [him] in a lot of trouble." He said Genevieve did not remember that she was physically attacked by a girl in the park who was offended by something Genevieve said. He said other people "beat her up pretty good." Foster told Buchanan that he saw Genevieve in court and "that's not a good idea." He asked Buchanan to give Genevieve "a message" and tell her "not to tell" on him. He gave Buchanan a telephone number and told her: "[T]ry to get ahold [*sic*] of her and tell her . . . I'm in big trouble here." "[S]he's gonna [*sic*] have to go to court and testify against me." "[B]ut that's gonna [*sic*] look bad on her cause she's takin [*sic*] the psych [*sic*] meds [*sic*] and she was drunk and she don't [*sic*] know what happened."

In a later phone call, Foster told Buchanan, "I hope she don't [*sic*] show up to none of the courts . . . because, she's going to get into trouble." He told her to tell Genevieve "that it's not a good idea . . . for her, because they're going to arrest her if she goes to court to testify against [him]." He said, "[I]t's not good for her" to testify. Buchanan responded, "Okay. I'll tell her."

After Foster's phone calls, Buchanan decided not to contact Genevieve. Foster's phone calls to Buchanan from jail were recorded and taped recordings of those calls were played to the jury.

In his defense, Foster testified that he and Genevieve went to the trailer where they drank beer and a pint of vodka. He woke up to find Genevieve "on top of him" and "was hurting" him. He "freaked-out " and slapped her. Genevieve fell onto a pile of automobile parts, she was bleeding and "held her mouth." Genevieve attacked him. He hit her, "pushed her back to the floor," and then he left. He lied to the police and told them that Genevieve

was "beaten up" by two women. He had previously given three different stories about what happened to Genevieve and his testimony at trial was the "fourth version of events."

## DISCUSSION

### I. *Section 136.1*

Foster contends that there is insufficient evidence to support his conviction for attempting to dissuade Genevieve from testifying. He claims he did not commit an act which constituted an attempt under section 136.1, subdivision (a)(2). We disagree.

■ Section 136.1, subdivision (a)(2), states that any person commits an offense where he or she "[k]nowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial . . . ." The prosecution must prove that "the defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts . . . ." (*People v. McDaniel* (1994) 22 Cal.App.4th 278, 284 [27 Cal.Rptr.2d 306].) Where a defendant has this intent and "performs an act that 'go[es] beyond mere preparation . . . and . . . show[s] that the perpetrator is putting his or her plan into action' . . . , the defendant may be convicted of criminal attempt." (*People v. Toledo* (2001) 26 Cal.4th 221, 230 [109 Cal.Rptr.2d 315, 26 P.3d 1051], citation omitted.)

Here the evidence shows that Foster intended to prevent Genevieve from testifying against him under section 136.1, subdivision (a)(2). He told Buchanan to tell Genevieve about the consequences she would suffer if she testified. But Foster argues he talked to an intermediary; did not directly communicate with Genevieve, who did not receive his threatening message; and therefore there is no evidence he committed a crime.

■ The statute neither restricts the means a defendant selects to commit the offense, nor does it require that defendant personally deliver the message to the witness. A threat need not actually deter or reach the witness because the offense is committed when the defendant makes the attempt to dissuade the witness. Section 136.1, subdivision (d), states: "Every person *attempting the commission of any act* described in subdivisions (a), (b), and (c) is guilty of the offense attempted *without regard to success or failure of the attempt. The fact that no person was injured physically, or in fact intimidated, shall be no defense against any prosecution under this section.*" (Italics added.)
■ " 'One of the purposes of the criminal law is to protect society from those who intend to injure it. . . .' " (*People v. Toledo, supra,* 26 Cal.4th at p. 230.) Therefore where a defendant makes an attempt to commit the

offense, " 'it is immaterial that for some collateral reason he could not complete the intended crime.' [Citation.]" (*Ibid.*)

Foster claims that his acts involved, at most, a solicitation of a third party to commit a crime. He contends his actions were not extensive enough to be considered an attempt to dissuade a witness. We disagree. " '[W]henever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of that design will constitute an attempt . . . .' " (*People v. Memro* (1985) 38 Cal.3d 658, 698 [214 Cal.Rptr. 832, 700 P.2d 446].) It is not necessary that the act " 'be the ultimate step toward the consummation of the design; it is sufficient if it is the first [one].' " (*Ibid.*)

Here Foster went beyond mere preparation and committed an attempt when he put his "plan into action" by conveying the threat he wanted Buchanan to deliver. (*People v. Toledo, supra,* 26 Cal.4th at p. 230.) The very nature of this crime is solicitation. By soliciting a third party to convey his wishes to the victim, Foster accomplished " 'some appreciable fragment of the crime . . . .' " (*People v. Memro, supra,* 38 Cal.3d at p. 698.) He directed how Genevieve would be dissuaded and controlled the content of the threats by giving Buchanan (1) instructions on how to contact Genevieve; (2) the precise messages to deliver; and (3) obtaining Buchanan's assurance that she would deliver them. Buchanan was merely the means for delivering his threats as Foster had decided to have her deliver his "message" instead of writing to Genevieve. Foster's directions to Buchanan constituted an attempt to dissuade because they were " 'acts done in furtherance of [his] design' " (*ibid.*) and her agreement to deliver the messages "made the intended crime *apparently possible*" (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1384 [112 Cal.Rptr.2d 620], original italics). Foster committed his attempt notwithstanding that Buchanan did not follow through. (*Ibid.*) Foster did everything necessary to ensure that his threat was carried out.

The instant case is similar to a foreign case that we find persuasive. In *People v. Coleman* (1957) 350 Mich. 268 [86 N.W.2d 281], the defendant asked Charles Goldsborough to tell a prosecution witness that the witness's extramarital affair would remain a secret if he did not testify against Coleman. Coleman gave Goldsborough the witness's address, but Goldsborough revealed the plan to the police and the witness testified against Coleman. On appeal, Coleman argued that his actions were insufficient to constitute an attempt to dissuade a witness. The Supreme Court of Michigan disagreed. It held that his acts went beyond solicitation and constituted a sufficient *"actus reus"* for an attempt. (*Id.,* 86 N.W.2d at p. 286.) It said, "When Coleman set in motion forces over which he no longer retained control and which would have produced their intended result of deterrence of the witness save for the interposition of elements beyond the power of his will he had made his attempt." (*Id.,* 86 N.W.2d at p. 288.)

Foster contends that the legislative history reflects that lawmakers never intended that a threat conveyed to an intermediary, which was not communicated to the witness, would be a crime under section 136.1. We disagree. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) We may look to the express language of the statute as an initial guide to its meaning. (*Ibid.*) But we are not bound by an interpretation consistent with that language if it leads to absurd results or undermines the legislative intent. (*Id.* at pp. 898–899.)

Here Foster's actions fall within both the letter and the spirit of the law. The statutory language is broad and Foster's acts fall well within the definition of an attempt to dissuade. Had the Legislature intended to adopt Foster's narrow definition of attempt, it could have easily done so by requiring that the act be committed in the presence of the witness or that the communication be personally delivered by the defendant. But narrowing the act in that way would encourage the use of intermediaries to dissuade witnesses. The legislative history reveals that lawmakers enacted section 136.1 to close loopholes and expand prosecution for the variety of intimidating acts which had eluded coverage under former section 136. That prior statute did not prohibit unsuccessful attempts to dissuade witnesses.

One of the factors legislators considered was a report entitled, "Reducing Victim/Witness Intimidation," by the American Bar Association's Criminal Justice Committee on Victims. That report indicated that current laws were inadequate because they did not cover the many forms of witness intimidation. These included not only a direct threat to the witness by the accused, but also threats by others on behalf of the crime perpetrator. The Legislature was aware of the long-standing problem of prisoners using others not in custody to intimidate witnesses. The goal of the legislation was to discourage all who attempted to dissuade witnesses, regardless of the means selected or the success of the attempt. To exclude Foster's conduct from the scope of the statute would undermine the legislative intent and open a loophole which the Legislature intended to close.

II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 331.

The judgment is affirmed.

Coffee, J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 19, 2007, S157712.