Filed 7/8/13  P. v. Borja CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RODRIGO BORJA,<br><br>    Defendant and Appellant. | B244589<br><br>(Los Angeles County<br>Super. Ct. No. B123581) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.
Raul A. Sahagun, Judge.  Affirmed.

        Vanessa Place, under appointment by the Court of Appeal, for Defendant and
Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney
General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and
Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Rodrigo Borja (Borja) was convicted of raping his niece when she was unconscious. He now challenges the sufficiency of the evidence supporting a second conviction that he conveyed a threatening message to dissuade his niece from testifying against him at trial. (Pen. Code, § 136.1, subd. (a)(1).)[1] We find no error and affirm.

## FACTS

Defendant Borja is the maternal uncle of Jane Doe. When Doe was young, Borja lived in her home. Later, she stayed for a month at his trailer home when she moved to California. They have never had a romantic relationship.

Doe turned 25 on October 30, 2011, and celebrated by meeting friends for dinner. Borja was the "designated driver" and drank one beer at the birthday party. Doe had "at least five" drinks, including a Long Island iced tea, an apple martini, a soft drink with two shots of alcohol, plus another shot. After drinking the last shot, she went to the dance floor and danced a little, but not with Borja. "After that I blacked out. I don't remember anything." She does not recall leaving the restaurant.

A friend nicknamed "Tita" traveled to the birthday party with Doe and Borja. Tita had one or two margaritas. She saw Doe consume multiple drinks: at the end of the evening, Doe "was fairly drunk because she couldn't keep her balance." Doe had to be helped to the car, was stammering, and fell. Borja showed no sign of intoxication, and was able to drive and communicate. Borja drove Tita home. Tita described Doe as "fairly unconscious" during the ride. Borja and Doe drove off together after Tita got out.

Doe has no memory of driving to or entering Borja's trailer. Instead, "the next thing I remember was waking up to him penetrating me. . . . I still felt like drunk when I woke up. I felt him probably like three, four times thrusting inside of me." Specifically, she felt his penis inside her vagina. When Doe uttered the name of a male friend, Borja got off of her, unlatched the top bunk bed in his trailer, and pretended to be asleep. Doe's underwear was rolled halfway down her thighs, her dress was pushed up, and her vagina was exposed.

---

[1]     All undesignated statutory references in this opinion are to the Penal Code.

Doe arose and asked Borja for her keys, telephone and wallet. He got down from the bunk bed and handed them to her, telling her she was too drunk to drive. He did not prevent her from leaving. She walked outside to her car and sent a text message to her friend Tita. It was just before five o'clock in the morning. Doe did not know why she was at Borja's trailer and wanted to make sure he had taken Tita home, since Doe did not remember leaving the restaurant.

Doe telephoned a friend named William because she was scared of Borja and wanted comfort. She could not stop crying, and cried even more when William asked if someone had hurt her. She drove to William's house, but was too embarrassed to tell him what happened. She asked to take a shower because she "felt dirty." In the shower, she "overdid it " and cleaned her vagina with water and soap for 10 minutes while crying. Afterward, she told William what happened and fell asleep.

On October 31, Tita's telephone showed that Doe sent a text message early in the morning. When they spoke, Doe sounded emotional, and "seemed scared and confused," saying that she awoke to find Borja on top of her and believed that he raped her. After Tita finished work, she and Doe went to a police station. A deputy took Doe to a hospital for an examination. A nurse asked questions, examined her whole body, and took photos of her genitals. Doe complained of genital soreness and had a "disruption of the skin surface." The nurse found bruises on the inside of Doe's thigh. Swabs were taken, sealed and given to law enforcement officers.

A criminalist analyzed the swabs taken during Doe's medical examination. Semen was detected on samples taken from her vulva, vagina, anus, and cervix. A DNA analysis was performed. The criminalist testified that the DNA in the samples "match[ ] the profile of Rodrigo Borja."

Criminal charges were filed against Borja. In February 2012, while the case was pending, Doe's mother received a call from Borja, who was in jail. She testified that using some "kind of codes, he let me know to tell my daughter not to go to court." He instructed his sister to tell Doe ("this doll"), "not to go to the party. And not to accept the

3

invitations.  Because if she attended the party, and if she signed or accepted the invitations, she's going to end up in a box."

Borja's call from jail was recorded, and a transcript was read to the jury.  Borja says that the criminal charges against him were dismissed then refiled.  He asks his sister to "communicate with the doll.  Say that if an invitation is received for the party, say do not go because they're going to want to set up a room.  The attorney talked to me about that."  His sister inquires, "which doll, my doll?" and Borja replies, "Yes."  He reiterates to not accept invitations "to go that day of the party . . . because my attorney told me that's the only thing they're waiting for him to arrive."  He adds something incomprehensible about "doll in a box."  Borja's sister asks whether he will stay in a "warehouse" here, or be sent to another "warehouse far from here?"  Borja answers, "Well, that's why I tell you, when by that day of the party, if he doesn't go . . . then the matter is over and they will again throw everything . . . and they will leave me."

Borja's sister testified that she had never before (or since) had occasion to discuss "dolls" with her brother, or "invitations to parties."  She believed he was using code to refer to Doe and was concerned about his "doll in a box" remark.  Though Borja used "he" during the conversation, she understood it to mean "she."[2]  She interpreted the conversation as a demand that Doe not come to court, adding "I was afraid and . . . I understood if she went to court that she would end up in jail also."

Doe's mother informed Doe about the conversation with Borja.  Doe, in turn, informed the investigating detective about Borja's call.  The detective explained that he serves subpoenas on witnesses, which are signed to show personal service to ensure their appearance at trial.  If the witness fails to appear, the case may get dismissed.

## PROCEDURAL HISTORY

Borja was charged with rape of an unconscious person (§ 261) in Count 1 and dissuading a witness from testifying (§ 136.1) in Count 2.  He pleaded not guilty.  Trial was by jury.  He was convicted on both counts.  Probation was denied and Borja was

---

[2]    She testified that Borja has poor grammar.

4

sentenced to the mid-term of six years in state prison on Count 1 and the mid-term of two years on Count 2.  The sentences are concurrent.

## DISCUSSION

Borja was convicted of violating section 136.1, subdivision (a)(1), which applies to anyone who "knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law."  Subdivision (a)(2) prohibits knowing and malicious *attempts* to dissuade a witness or victim from testifying.  Both crimes carry the same penalty.  To "dissuade" means to advise or discourage a person against an action.  (Webster's 3d New Internat. Dict. Unabridged (1981) p. 657.)

To obtain a conviction under section 136.1, the prosecution must prove that the "defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts . . . ."  (*People v. McDaniel* (1994) 22 Cal.App.4th 278, 284.)  Borja argues that there is insufficient evidence to sustain a conviction for dissuading a witness or victim.  He asserts that "there was no evidence that the third party [his sister] conveyed the threat, or that the victim was even momentarily dissuaded."

Borja's description of the evidence is incorrect.  First, there is evidence that his sister conveyed the threat.  She testified, at page 119 of the reporter's transcript, that "After the conversation [with Borja], I called my daughter about what we had talked about. . . .  Because the conversation that we had with Mr. Borja, my brother, I thought that . . . he was very firm when he was telling me.  And since he was talking in code, I thought he was referring to my daughter."  Doe testified that she spoke to her mother about the telephone call from Borja.

Second, there is evidence that the victim was intimidated by Borja's demand.  Instead of ignoring Borja's call, or treating it as a joke, she reported Borja's conduct to the police.  The jury could reasonably infer that Doe's report to the police shows that she was dissuaded from (i.e., advised against) coming to court.  Certainly, Borja intended to affect Doe by making the call, in hopes that the charges against him would be dismissed if Doe failed to appear at trial.  In short, Borja's words support a reasonable inference that

5

he sought to induce Doe to withhold testimony, which completes the crime. (*People v. Thomas* (1978) 83 Cal.App.3d 511, 514.)

Borja relies on *People v. Foster* (2007) 155 Cal.App.4th 331 (*Foster*). In *Foster,* the defendant assaulted his girlfriend. While jailed, he called a friend to say that his girlfriend's appearance in court was "'not a good idea'" and directed the friend to ask the victim "'not to tell'" on him. He also said, "'I hope she don't [*sic*] show up to none of the courts . . . because, she's going to get into trouble,'" suggesting that the victim would be arrested if she appeared in court to testify against him. The friend replied, "'Okay. I'll tell her,'" but decided not to contact the victim. The defendant's recorded jailhouse calls were played for the jury. (*Id.* at p. 334.)

The appellate court in *Foster* concluded that the defendant was properly convicted of attempting to dissuade a witness. The court observed that section 136.1 does not require that the defendant personally deliver the message to the witness. (*Foster, supra,* 155 Cal.App.4th at p. 335.) Foster put his plan into action by voicing the threat he wanted his friend to convey. He completed the attempt even though his friend did not follow through and inform the victim about the threat: "Foster did everything necessary to ensure that his threat was carried out." (*Id.* at p. 336.)

Here, Borja instructed a third party to tell the victim "not to go to the party" because if she attended the party, "she's going to end up in a box." This was Doe's mother's interpretation of the threat, and she was "afraid" for her daughter. Borja's threat was actually communicated to the victim, to dissuade (i.e., discourage) her from testifying. Unlike *Foster*, Borja's effort to dissuade was not thwarted by the messenger's failure to cooperate. Instead, the threat reached the victim.

To secure a conviction under section 136.1, the prosecution need not prove that the victim or witness changed her testimony or failed to appear in court in response to a threat. "Every person attempting the commission of any act described in subdivisions (a), (b), and (c) *is guilty of the offense attempted without regard to success or failure* of the attempt. The fact that no person was injured physically, or in fact intimidated, shall be no defense against any prosecution under this section." (§ 136.1, subd. (d), italics

6

added.)  "The goal of the legislation was to discourage all who attempted to dissuade witnesses, regardless of the means selected or the success of the attempt."  (*Foster, supra,* 155 Cal.App.4th at p. 337.)

Borja complains that the jury instruction given conflated subdivisions (a)(1) and (a)(2) of section 136.1.[3]  The instruction was taken from CALJIC No. 7.14.  Although the court read the bracketed portions of CALJIC No. 7.14 that apply to attempts under subdivision (a)(2), this is not reversible error.  The jury found Borja guilty of the completed offense, which is supported by substantial evidence, so it surely would have found him equally guilty of an attempt to dissuade.  Subdivisions (a)(1) and (a)(2) of section 136.1 carry the same penalty, so the outcome would not have changed even if Borja had been charged with violating subdivision (a)(2) instead of (a)(1).

---

[3]     The instruction read, "Defendant is accused in Count 2 of having violated section 136.1, subdivision (a)(1) of the Penal Code, a crime.  [¶]  Every person who knowingly and maliciously prevents or dissuades or attempts to prevent or dissuade any witness or victim from:  [¶]  Attending or giving testimony at any trial, proceeding, or inquiry authorized by law, is guilty of a violation of Penal Code section 136.1, subdivision (a)(1), a crime.  It is immaterial whether an attempt to prevent or dissuade was successful.  [¶] The fact, if it be the fact, that no person was injured physically, or intimidated, is not a defense.  [¶]  In order to prove this crime, each of the following elements must be proved: [¶]  1.  Jane Doe was a victim; [¶] 2.  Rodrigo Mondragon Borja, with the specific intent to do so, dissuaded or attempted to dissuade Jane Doe from attending or giving testimony at any trial, proceeding, or inquiry authorized by law; [¶] 3.  Rodrigo Mondragon Borja acted knowingly and maliciously."

## **DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.