Filed 2/6/14  P. v. Rosell CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KERRY LYNN ROSELL,<br><br>    Defendant and Appellant. | B242761<br><br>(Los Angeles County<br>Super. Ct. No. YA078491) |

APPEAL from a judgment of the Superior Court of Los Angeles County. James R. Brandlin, Judge.  Affirmed.

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Kerry Lynn Rosell (Rosell) was convicted on five counts of robbery (Pen. Code, § 211)[1] and one count of attempting to dissuade a witness (§ 136.1, subd. (a)(2)). After considering the impact of firearm enhancements (§ 12022.53, subd. (b)) and the Three Strikes law (§ 667), the trial court sentenced Rosell to 210 years to life in state prison. On appeal, Rosell contends: (a) there was insufficient evidence of attempted witness dissuasion; (b) he was prejudiced when the trial court failed to properly instruct the jury on attempted witness dissuasion; and (c) he received ineffective assistance of counsel at sentencing because counsel failed to competently argue that Rosell fell outside the spirit of the Three Strikes law and the trial court should strike one of the prior serious and/or violent felonies.

We find no error and affirm.

## FACTS

### Rosell's History

Rosell was born in August 1988.

At age 14, in 2002, Rosell was arrested for sexual battery (§ 243.4, subd. (d)) and issuing terrorist threats (§ 422). The petition filed against him was sustained. In 2004, he was arrested for assault with a deadly weapon (§ 245, subd. (a)(2)). In 2005, when he was 17 years old, Rosell was arrested for burglary (§ 459). The arresting officer's report indicated that Rosell and another suspect burglarized and ransacked the victim's home. Not until 2006 was Rosell convicted on the 2004 and 2005 crimes. In connection with the 2004 crime, he was sentenced to four years in state prison. However, he was found unfit for state prison and ordered housed at the California Youth Authority (CYA). With respect to the 2005 crime, he received the same four years in the CYA. He was paroled on February 27, 2010.

### The Information

In an information filed by the Los Angeles County District Attorney, Rosell was charged with five counts of second degree robbery (§ 211) and one count of attempting to

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

dissuade a witness (§ 136.1, subd. (a)(2)). Regarding the robberies, it was alleged that Rosell personally used a firearm (§ 12022.53, subd. (b)). It was further alleged that Rosell had two prior serious felony convictions or juvenile adjudications within the meaning of section 667, subdivision (a)(1), section 667, subdivisions (b) through (i) and section 1170.12, subdivisions (a) through (d)), and that he suffered a prior prison term within the meaning of section 667.5, subdivision (b).

**Evidence Presented at Trial**

*The robberies*

Rosell approached two sisters on a street in Culver City and demanded their purses. When they did not comply right away, Rosell took out a gun and pointed it at the head of one sister. He took their purses, and also one sister's keys, then ran away. About a week later, in the City of Gardena, Rosell robbed Rachel Cho (Cho) and two friends at gunpoint and absconded with Cho's pursue, the first friend's wallet and the second friend's money clip.

*Rosell's attempt to dissuade Cho from testifying*

After his arrest, Rosell was housed in the North County Correctional Facility in dormitory No. 922. From July 21, 2010, through August 30, 2010, Michael Amon (Amon) was housed there, too. Inmates were allowed to congregate in the dormitory's day area. Consequently, Rosell and Amon had opportunities to interact with each other.

Amon had several tattoos, one of which was a swastika. Typically, that tattoo signifies "white power." Rosell is Black.

On August 31, 2010, police officers from the City of Torrance detained Amon and searched him because he was on parole. They recovered a note with the name "Rachel Cho" on it. It listed her college address in Northern California, the City of Gardena address where she was robbed, her date of birth and her telephone number. Then the note stated: "This is [the] one that identified me in the six pack lineup. . . . [She] stays [in Northern California]. The [City of Gardena address] is where the 211 occurred. [¶] . . . [¶] 'Where the 211 occurred . . . I think is her parents' house. I just need you to scare her to the point she doesn't come to court, and leaves this case alone. She is the only one

3

holding me." Torrance Police Officer Nicholas Gambaiani thought somebody in Gardena might be in trouble, and that the note made it look like "either the subject we had contacted had already gone and somehow intimidated somebody, or was on his way to intimidate somebody [into] not showing up to court."

The Torrance police officers forwarded the note to Detective Pam Robinson in the Gardena Police Department. She went to the North County Correctional Facility and searched a bag that contained various items that belonged to Rosell, including documents that had been recovered from his cell. One of the documents came from the Parole Boards Corrections Department and pertained to Amon. His name, address and phone number was handwritten on the back of the document. A second document was a printout of the following query on a legal advice Web site: "'Will the case be dismissed if a witness does not show up in court.'"

A forensic document examiner compared four documents taken from Rosell's cell to the note recovered from Amon. The examiner concluded that the handwriting came from the same author.

**The Verdict; Findings on the Special Allegations**

The jury found Rosell guilty on all six counts and found the firearm allegation in each robbery count to be true. After a bench trial on the prior conviction allegations, the trial court found that Rosell had two prior serious felony convictions, and that he had served one prior prison term.

**Sentencing**

The prosecution filed a brief requesting that Rosell be sentenced consecutively and to the maximum due to the following factors in aggravation under California Rules of Court, rule 4.421(a) and (b): Rosell robbed five different victims at gunpoint. In the first robbery, he pushed one of the sisters. In the second robbery, he threatened to shoot one of Cho's friends if he did not comply with Rosell's demands. The robberies occurred over the course of about two weeks, and his pattern of conduct demonstrated a serious danger to society. After he was arrested and jailed, he obtained the assistance of a fellow inmate to scare Cho so she would not testify. He was convicted of assault with a firearm

4

(§ 245, subd. (a)(2)) and first degree residential burglary (§ 459) on February 28, 2006, and when he was a minor in 2002, a juvenile court sustained allegations that he issued a criminal threat (§ 422) and perpetrated two sexual batteries (§ 243.4, subd. (d)). Rosell served concurrent state prison sentences as a result of two criminal cases. At the time he committed the robberies, he was on parole, making his prior performance on parole unsatisfactory. Based on the foregoing, the prosecution asked the trial court to sentence Rosell to an indeterminate sentence of 200 years to life with a consecutive and additional terms of 11 years.

At the hearing, Rosell's counsel argued for what the trial court perceived to be a 45-year second strike sentence. It stated: "I guess the question that I would have of you is in order to reach a second strike sentence, I would have to make, in essence, a factual finding that [Rosell] falls outside of the spirit of the Three Strikes Law. [¶] As you know, the court is required to look at his prior criminal history, the facts of this case, and any mitigating circumstances offered by the defense. [¶] His prior criminal history is significant. And he's a young man, but even at age 14, he had a juvenile petition for sexual battery and for terrorist threats. [¶] In 2004, he had a conviction that resulted in a CYA commitment for shooting into an inhabited dwelling and assault with a firearm. [¶] And then in 2005, is this other burglary case in which he was sentenced to the Youth Authority, presumably for that concurrent term. [¶] And then on this case, while he's in custody, he affirmatively attempts to intimidate a witness. [¶] It's pretty hard to see mitigating circumstances based on that conduct. [¶] I'm really concerned about the public safety issues that are involved with an individual who commits repeated robberies."

In response, Rosell's counsel argued that a 45-year sentence would be an adequate punishment. He pointed out that the victims of the charged crimes were not brutalized, and then stated: "I know [Rosell's] crimes, which took place early on in his particular life—we have the two things in Compton which were on the same date that he took the plea. And we have the juvenile matters. [¶] I'm asking the court to simply give him some mercy at this time."

5

Following this colloquy, the trial court stated: "First with regards to the motion to strike under [*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497], . . . section 1385, I do not find that [Rosell] falls outside the spirit of the Three Strikes Law. [¶] Given the aggravated facts of this particular case, I think it would be an abuse of discretion to strike [one of the priors]."

The trial court imposed sentences of 25 years to life on each of the six counts, all to run consecutively. Regarding the robbery counts, the sentences were enhanced by10 years due to the firearm allegations. Finally, the trial court imposed five-year enhancements under section 667, subdivision (a)(1) based on the two prior serious felony convictions. Based on an aggregation of all the sentences, Rosell was sent to state prison for 210 years to life with 870 days of credit.

This timely appeal followed.

## DISCUSSION

### I. Attempted Witness Dissuasion.

Rosell contends that there was insufficient evidence to convict him of witness dissuasion pursuant to section 136.1, subdivision (a)(2). Thus, we are called upon to apply the substantial evidence test. Accordingly, we "'must review the whole record in the light most favorable to the judgment below to determine whether it discloses *substantial evidence*—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Cuevas* (1995) 12 Cal.4th 252, 260.) "The standard of review [is not altered] in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] '"Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible to two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt."'" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

Section 136.1, subdivision (a)(2) provides that a person is guilty of a public offense if he "[k]nowingly and maliciously attempts to prevent or dissuade any witness or

6

victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." Regarding all attempts, section 21a provides: "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." To qualify as an attempt, an act "must go beyond mere preparation and show that the [defendant] is putting his or her plan into action; it need not be the last proximate or ultimate step toward commission of the crime or crimes [citation], nor need it satisfy any element of the crime [citation]." (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8.) It may be enough that the defendant takes the first step toward committing a crime after the preparations have been made. (*Ibid*.) Our Supreme Court has "long recognized that '[w]henever the design of a person to commit [a] crime is clearly shown, slight acts in furtherance of the design will constitute an attempt.' [Citations.]" (*Id*. at p. 9.)

Case law establishes that a trier of fact must measure, to a degree, the probability that the defendant's actions will actually result in a crime if the facts are as he or she believes them to be. As explained in *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1383–1384 (*Ryan N.*): "'[W]hen commission of the substantive offense is factually impossible, a defendant may be convicted of an *attempt* to commit the offense when it is proven that he had the specific intent to commit the offense and did those acts he believed necessary to consummate it but failed to commit the statutory offense because, unknown to the actor, one or more of the essential elements of the offense were lacking.' [Citation.] Thus, a defendant may be convicted of an attempt to commit a crime where there is sufficient evidence to demonstrate that the means used by the defendant, together with the surrounding circumstances, made the intended crime *apparently possible*. "'If there is an apparent ability to commit the crime in the way attempted, the attempt is indictable, although, unknown to the person making the attempt, the crime cannot be committed, because the means employed are in fact unsuitable, or because of extrinsic facts, such as the nonexistence of some essential object, or an obstruction by the intended victim, or by a third person.'" [Citations.]"

Regarding the public policy behind punishing a defendants who attempts to commit a crime, *People v. Toledo* (2001) 26 Cal.4th 221, 230 (*Toledo*), had this to say: "'One of the purposes of the criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime.' [Citation.]" From *Ryan N.* and *Toledo*, we glean that an attempt is not a crime unless it creates a danger of harm.

According to Rosell, his conviction for attempted dissuasion should be reversed because there is no evidence permitting a jury to conclude beyond a reasonable doubt that he asked Amon to scare Cho, or that Amon assented. In particular, Rosell argues that Amon's possession of a note written by Rosell does not establish that they ever communicated. He labels Amon a white supremacist and argues that it is improbable that he would help a black man. Rosell suggests that a more likely explanation for why Amon possessed the note was that he stole it with the intention of blackmailing Rosell to further some racist agenda. In addition, Rosell suggests that there was no attempt unless Amon intended to dissuade Cho.

We cannot accede to Rosell's position. He contends that the only evidence offered by the prosecution of attempted witness dissuasion was Amon's possession of the note and Officer Gambaiani's testimony that the note suggested to him that Amon had already intimidated Cho, or was about to. The jury, however, was also presented with evidence that Rosell possessed parole paperwork pertaining to Amon, and also Amon's name, address and telephone number. This evidence suggests that Rosell had communicated with Amon, and it undermines Rosell's speculation that Amon possessed the note because he stole it. Moreover, the fact that Rosell had Amon's contact information and Amon was carrying the note with him after being released from jail supports the reasonable inference that Rosell solicited Amon's participation in a scheme to dissuade Cho from testifying, and that Amon agreed to participate. Based on *Ryan N.* and *Toledo*, Amon's intent is immaterial. What matters is whether Rosell believed he had done

8

everything necessary to make the crime apparently possible.  The reasonable inferences establish that belief.

Next, Rosell contends:  "Assuming, arguendo, that the evidence in this case could support a verdict of solicitation, [Rosell] submits that solicitation is not invariably sufficient to prove an attempt."  By this, we take Rosell to mean that he was guilty of criminal solicitation, at most.

It is a crime punishable by no more than a year in jail to solicit another to dissuade a witness from testifying.  (§ 653f, subd. (a).)  To prove solicitation, the prosecution must show that a soliciting message was received by the intended recipient.  (*People v. Saephanh* (2000) 80 Cal.App.4th 451, 458.)  On a continuum between solicitation of a crime and an attempted crime, there is overlap.  (*Decker, supra,* 41 Cal.4th at p. 12 [When discussing attempted murder, the court explained that there can be overlap "between evidence that would tend to prove solicitation to murder and that which would tend to prove attempted murder"].)

The evidence here was sufficient to show a solicitation.  The question is whether it also showed an attempt.  The answer is yes.

Like here, the defendant in *People v. Foster* (2007) 155 Cal.App.4th 331 (*Foster*) argued that he was guilty of a solicitation at most.  The court concluded otherwise.  It found an attempted dissuasion when the defendant asked a third party to inform a witness of "the consequences she would suffer if she testified."  (*Id*. at p. 335.)  According to the court, the defendant "went beyond mere preparation and committed an attempt when he put his 'plan into action' by conveying the threat he wanted [the third party] to deliver. [Citation.]  . . . By soliciting a third party to convey his wishes to the victim, [the defendant] accomplished '"some appreciable fragment of the crime . . . ."'  [Citation.] He directed how [the victim] would be dissuaded and controlled the content of the threats by giving [the third party] (1) instructions on how to contact [the victim]; (2) the precise messages to deliver; and (3) obtaining [the third party's] assurance that she would deliver them. . . .  [The defendant's] directions to [the third party] constituted an attempt to dissuade because they were '"acts done in furtherance of [his] design"' [citation] and her

9

agreement to deliver the messages 'made the intended crime *apparently possible*' [citation]. [The defendant] committed his attempt notwithstanding that [the third party] did not follow through. [Citation.] [The defendant] did everything necessary to ensure that his threat was carried out." (*Id*. at p. 336.)

In the case at bar, Rosell put his plan into action by (1) researching where Cho lived while away at college and while at home with her parents, her date of birth and her telephone number; (2) researching whether a case will be dismissed if a witness does not appear to testify; (3) discovering that Cho had identified him during a six-pack lineup; (4) asking Amon to dissuade Cho from testifying; (5) telling Amon where Cho could be located in college and in Gardena; (6) giving Amon the specific instruction to scare Cho to the point she did not go to court; and (7) securing Amon's consent to dissuade Cho, making the crime apparently possible. Under *Foster*, *Ryan N.* and *Toledo*, the direct and circumstantial evidence was enough to show an attempt because Rosell believed he did everything necessary to dissuade Cho.

Rosell would have us use the facts in *Decker* as the one and only yardstick for assessing the overlap between solicitation and attempt. In that case, the evidence showed that the defendant located an assassin to kill his sister. "He furnished the hired assassin with a description of his sister, her home, her car, and her workplace, as well as specific information concerning her daily habits. He also advised the assassin to kill [the sister's friend] if necessary to avoid leaving a witness behind. [The defendant] and the hired assassin agreed on the means to commit the murder, the method of payment, and the price. The parties also agreed that [the defendant] would pay $5,000 in cash as a downpayment. Before [he] handed over the money, the assassin asked whether [the defendant] was 'sure' he wanted to go through with the murders. [He] replied, 'I am absolutely, positively, 100 percent sure, that I want to go through with it. I've never been so sure of anything in my entire life.'" (*Decker*, *supra*, 41 Cal.4th at p. 4.) To distinguish *Decker*, Rosell points out, inter alia, that there is no evidence that Amon received consideration. But the *Decker* court never stated that consideration was a fact that tipped the scales from solicitation to attempt. It simply counted that as one fact

10

indicating that a plan was put into action. (*Id*. at p. 9.) The court made clear that the issue was whether the defendant had knocked over the first domino in his plan such that there was nothing left for him to do. In our view, Rosell knocked over that domino once he secured Amon's assent to the dissuasion plan.

Underneath our analysis is the following idea. The relevant inquiry is not, as Rosell suggests, whether there is an accretion of threshold facts such as an agreement and consideration, but whether the circumstances in the particular case establish that witness dissuasion was apparently possible and therefore, at least as far as the defendant was concerned, there was real danger that the witness dissuasion would actually be committed. Thus, it is conceivable that there are scenarios in which a jury could find an attempted dissuasion even though the defendant never reached an agreement with a solicited party. For example, if a defendant knows that leaving a voice mail message requesting help from a fellow gang member will result in a witness being dissuaded, and if there is a history or culture supporting the defendant's belief, that may be enough for a conviction under section 136.1 even though the defendant never secured an agreement from the fellow gang member to follow through. On the other hand, if a defendant solicits a stranger to dissuade a witness and does not obtain an agreement, or if a defendant obtains an agreement from a stranger to dissuade a witness but circumstances known to the defendant make it impossible for the dissuasion to occur, that may be a solicitation but not an attempt.

## II. The Jury Instruction on Witness Dissuasion.

After the close of evidence, the trial court identified the jury instructions that it planned to give to the jury. The list included CALCRIM No. 2622, but did not include CALCRIM No. 460.[2] There was no objection. Per CALCRIM No. 2622, the trial court

---

[2] If CALCRIM No. 460 had been given in this case, the beginning portion of it would have read as follows: "[Rosell] is charged [in Count 6] with attempted [witness dissuasion.] [¶] To prove that [Rosell] is guilty of this crime, the People must prove that: [¶] 1. [Rosell] took a direct but ineffective step toward committing [witness dissuasion]; AND [¶] 2. [Rosell] intended to commit [witness dissuasion]. [¶] A *direct step* requires more than merely planning or preparing to commit [witness dissuasion] or obtaining or

11

instructed the jury, inter alia, that Rosell violated section 136.1, subdivision (a)(2) if he "maliciously tried to prevent/or discourage Rachel Cho from attending or giving testimony at a court proceeding."[3]

Rosell argues that this instruction was deficient because it failed to convey that mere preparation is not enough for an attempt, and there is no attempt absent a direct but ineffectual act done toward the commission of a crime. In other words, instructing that the first element of the offense required a showing that he tried to prevent or discourage Cho from testifying is an incorrect statement of the law. Pushing the issue, Rosell contends that the word "attempt" does not have a straightforward dictionary meaning, and that the word was not even used in the instruction. As a result, he maintains that the instruction allowed the jury to conclude that he tried to dissuade Cho merely by writing

---

arranging for something needed to commit [witness dissuasion]. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. A direct step indicates a definite and unambiguous intent to commit [witness dissuasion]. It is a direct movement towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt."

[3]     The trial court instructed: "The defendant is charged in count 6 with intimidating a witness, in violation of Penal Code section 136.1. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] one, the defendant maliciously tried to prevent or discourage Rachel Cho from attending or giving testimony at a court proceeding; [¶] two, Rachel Cho was a crime victim; [¶] and three, the defendant knew he was trying to prevent or discourage Rachel Cho from attending or giving testimony at a court proceeding, and intended to do so. [¶] A person acts maliciously when he or she unlawfully intends to annoy, harm, or injure someone else in any way, or intends to interfere in any way with the orderly administration of justice. [¶] As used here, a witness means someone, or a person the defendant reasonably believed to be someone, who knows about the existence or nonexistence of facts relat[ing] to a crime, or who has reported a crime to a peace officer, or who has been served with a subpoena issued under the authority of any state or federal court. [¶] A person is a victim if there is a reason to believe that a federal or state crime is being or has been committed or attempted against him or her. [¶] It is not a defense that the defendant was not successful in preventing or discouraging the victim or witness. It is not a defense that no one was actually physically injured or otherwise intimidated."

12

the note.  In conclusion, Rosell avers that "the instructional error of failing to define the elements of an attempt, using CALCRIM 460 or language similar to that instruction, was presumptively prejudicial."

The People opine that "[i]n requiring a showing that [Rosell] maliciously 'tried' to prevent or discourage the witness there was no danger that a jury would think that a defendant could be convicted without a showing that he had taken some step[s] to put his plan into motion.  To the contrary, CALCRIM No. 2622 sufficiently conveyed the legal principle that a slight act performed in furtherance of a design to commit a crime will constitute an attempt.  Accordingly, the trial court had no sua sponte duty to clarify what was meant by the word[] 'tried.'"

Assuming without deciding that CALCRIM No. 2622 was incomplete in the context of this case, or the instruction was ambiguous (*Estelle v. McGuire* (1991) 502 U.S. 62, 77, or the trial court otherwise erred by not giving sua sponte instructions on the principles applicable to attempt crimes (*People v. Breverman* (1998) 19 Cal.4th 142, 154), we find no basis to reverse.  A trial court's failure to instruct on all elements of an offense is not reversible error under the federal Constitution if it was harmless beyond a reasonable doubt.  (*People v. Bell* (2009) 179 Cal.App.4th 428, 439.)  If a trial court gives an instruction that "is potentially ambiguous or misleading, the instruction is not reversible error unless there is a reasonable likelihood that the jurors misunderstood or misapplied the pertinent instruction.  [Citations.]"  (*People v. Iboa* (2012) 207 Cal.App.4th 111, 121.)  Under either standard, Rosell's conviction for violating section 136.1, subdivision (a)(2) must stand.

Beyond a reasonable doubt, the jury would have convicted Rosell of attempted witness dissuasion had they been instructed with CALCRIM No. 460 or language similar to that instruction.  During closing argument, Rosell's attorney stated that Rosell's fingerprints were not on the note recovered from Amon, and then stated:  "So we have a document that by itself, could prove [the attempted dissuasion count], if [the prosecution] could link [Rosell] to that piece of paper."  According to the attorney, the origins of the note were "hard to believe[.]"  The jury could not have convicted Rosell on the attempted

13

dissuasion count had it not believed that he wrote the note or was somehow linked to it. As for how Amon came into possession of the note, there was only one reasonable explanation: it was given to him by Rosell. The evidence showed that Rosell knew about Amon's parole and had his contact information, and they had access to each other while in jail. We have not been advised of any evidence suggesting that Amon stole the note out of Rosell's cell, or even that Amon had the opportunity. The note had no intrinsic value, and there was no evidence that Amon tried to use it for blackmail. Thus, the only reasonable explanation for Amon's possession of the note was that he had agreed to dissuade Cho, and that Rosell gave the note to Amon as a result. Indeed, there was no apparent reason for Amon to take the note out of jail except to act on Cho's information. Ineluctably, the evidence and reasonable inferences pointed to the crime of attempted dissuasion.

Nor is there a likelihood that the jury misunderstood and misapplied CALCRIM No. 2622. The common understanding of the word "tried" is the equivalent of "attempted" and denotes an effort designed to achieve a goal, an effort that makes initial use of any preparations. Preparation, in common understanding, does not qualify as trying or attempting. Thus, there was no realistic danger that the jury believed that Rosell committed the crime of attempted dissuasion simply by writing the note regarding Cho, and that Rosell did not do everything he believed necessary, absent intervening causes, for Cho to be dissuaded.

## III. Ineffective Assistance of Counsel at Sentencing.

Rosell argues "that had trial counsel identified and explained the mitigating effect of [Rosell's] juvenile conduct and mental disorder, the trial court would likely have concluded that [he] fell outside the spirit of the Three Strikes law." This argument lacks merit.

To demonstrate ineffective assistance of counsel, a defendant must show that counsel's action was deficient and prejudicial. To establish prejudice, a defendant must demonstrate that there is a reasonable probability that he or she would have obtained a more favorable result absent deficient representation. In general, the Court of Appeal

14

will presume that counsel's reasonable tactical decisions meet professional standards of competence. Counsel's decisionmaking will be assessed only in the context of the available facts. (*People v. Hinton* (2006) 37 Cal.4th 839, 876.) Typically, a claim of ineffective assistance of counsel must be raised by writ of habeas corpus, not appeal. An ineffective assistance of counsel claim may be reviewed on direct appeal only when there can be no satisfactory explanation for counsel's action or inaction. (*In re Darlice C.* (2003) 105 Cal.App.4th 459, 463.)

The first prong of the analysis is whether Rosell's counsel's representation at the sentencing hearing was deficient because he failed to alert the trial court to facts permitting it to strike a prior serious and/or violent felony conviction. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Before striking a strike, "'the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*People v. Carmony, supra*, 33 Cal.4th at p. 377.) There is a presumption that "any sentence that conforms to [the] sentencing norms is both rational and proper." (*Id*. at p. 378.) As a result, "a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Ibid*.) The circumstances must be extraordinary before a career criminal will be deemed to fall outside the spirit of the law. (*Ibid*.)

Regarding Rosell's crimes as a juvenile, he contends that counsel should have argued that this is not a case in which Rosell committed previous armed robberies and the charged offenses can be seen as part of a pattern. He further contends that counsel "seems not to have known the details of the prior convictions or the legal significance of their juvenile character," and that merely requesting mercy from the trial court was an

unwarranted concession that only mercy could operate to reduce Rosell's sentence. But, as Rosell admits, the circumstances surrounding his juvenile crimes were not developed in the record. It is impossible for us to determine the degree to which they involved factors in mitigation or aggravation, except we do know that he shot at an inhabited dwelling, suggesting a pattern of arming himself. The record also suggests that he ransacked a victim's home during a burglary when he was 17 years old. At the sentencing hearing, counsel referred to Rosell's youth, and the record establishes that the trial court was well aware of the crimes that Rosell committed while he was 14 to 17 years old. It is not clear what more counsel could have said to suggest that those crimes should be discounted. Though Rosell accuses counsel of not being sufficiently well versed in the facts, that is also something we cannot determine from the record. We do not know the nature of counsel's research into the case, nor are we privy to his thought process. Rosell, of course, argues that there can be no reasonable explanation for counsel's tactics. We are not convinced. What was Rosell's motive for his juvenile crimes? Did they exhibit criminal sophistication, or perhaps a callous disregard for human life? There are sufficient gray areas regarding Rosell's juvenile record that we are unable to conclude that the adequacy of counsel's representation can properly be assessed on direct appeal.

Next, Rosell argues: "There is no psychiatric opinion evidence in this record that [Rosell] suffered from any mental illness at the time of the prior convictions or currently. However, on December 4, 2010, [Rosell's] newly appointed APD attorney expressed 'concerns' about [Rosell's] mental health status. She specifically referenced a 'previous diagnosis' without mentioning details. She opined that she, personally, did not observe any *current* indication of mental illness. . . . [¶] On January 3, 2011, the trial court's review of a letter from [Rosell's] mother also revealed grounds to doubt [Rosell's] competence to stand trial under Penal Code section 1368. The trial court went so far as to suggest that [Rosell's] new attorney consider declaring a doubt regarding [Rosell's] competency. . . . [¶] During the booking process, [Rosell] advised the officer that he had previously been diagnosed with bipolar disorder. . . . [¶] While these record facts are

'scant,' they are certainly sufficient to put defense counsel on notice that further inquiry and documentation is needed, and perhaps even appointment of an expert pursuant to Evidence Code section 730. . . . [¶] A mental condition that significantly reduces culpability for a crime is a mitigating factor. . . . [¶] . . . Here, counsel had ample reason to conduct a further investigation[, but] appears to have been indifferent or 'busy' with other cases" and therefore failed to inquire. (Fn. omitted.)

Because the record does not establish that Rosell has a mental illness, this is not a case where there is only one reasonable explanation for counsel's silence on the topic. We do not know what his personal observations of Rosell were, nor do we know what Rosell told counsel. Certainly if counsel was aware of the possibility that Rosell was suffering from a mental illness, counsel had a duty to inquire. But he may have, and he may have determined that Rosell did not have a mental illness. Thus, this issue cannot be decided on direct appeal.

Even if we concluded that counsel should have argued differently, we conclude that there was no prejudice. The trial court indicated that Rosell's criminal history was significant, and that due to the aggravated facts of the case, it would be an abuse of discretion to strike one of the priors and make this a second strike instead of a third strike case. Notably, Rosell used a firearm to commit five robberies while on parole, and then attempted to dissuade Cho from testifying. Given the trial court's concern for the public's safety, the trial court's awareness that the underlying strikes arose from Rosell's conduct as a juvenile, and the paucity of evidence that Rosell suffered from bipolar disorder, it is not reasonably probable that counsel could have succeeded by advancing additional argument.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
CHAVEZ

18