Filed 12/30/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ABDULLAH WAHIDI,<br><br>　　　Defendant and Appellant. | B245872<br><br>(Los Angeles County<br>Super. Ct. No. LA068054) |

　　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Kellogg, Judge.  Affirmed.

　　　　　James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

　　　　　　　　　　_____

Abdullah Wahidi was convicted following a court trial of, among other offenses, attempting to dissuade a witness from testifying.  On appeal, he contends the evidence is insufficient to support the conviction.  We affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Charges*

Wahidi was charged in a seven-count information with assault with a deadly weapon against four different victims, felony vandalism, misdemeanor battery and attempting to dissuade a witness by using force or threat of force within the meaning of Penal Code section 136.1, subdivisions (a)(2) and (c)(1).[2]  Wahidi pleaded not guilty, denied the special allegations and proceeded to a court trial after waiving his rights to a jury trial.

2. *Summary of Trial Evidence*

a. *People's evidence*

On February 28, 2011, Wahidi was involved in a physical altercation with Farahan Khan and three other individuals in a parking lot, during which Wahidi punched one of Khan's friends in the face and then broke the windows of Khan's car with a baseball bat while at least one of Khan's friends was sitting in the vehicle.

On September 25, 2011, the day before the preliminary hearing, Wahidi approached Khan following prayer services at Khan's mosque.  Khan had seen Wahidi at other mosques, but never before at Khan's mosque.  Wahidi apologized to Khan about the incident, adding, "[W]e're both Muslims.  That if we could just settle this outside the court in a more Muslim manner family to family, have our families meet and settle this out of court and not take this to court."  Khan understood Wahidi wanted the case to be resolved informally and did not want Khan to testify at the preliminary hearing.  Khan

---

[1]     The parties agree the abstract of judgment contains clerical errors, which we order corrected.  (*People v. Mitchell* (2011) 26 Cal.4th 181, 186-187.)

[2]     Statutory references are to the Penal Code.

2

responded sympathetically to Wahidi and accepted his apology. On the day of the preliminary hearing, Khan told the prosecutor about his conversation with Wahidi and asked if the case could be handled in another way. Wahidi never demanded that Khan refrain from testifying or threatened Khan with harm if he were to come to court.

### b. *Defense evidence*

Wahidi testified in his own defense and denied he had spoken to Khan at the mosque on September 25, 2011, with the intent to persuade Khan not to testify.

### 3. *Trial Court's Findings*

At the conclusion of the trial, the court found Wahidi guilty of one count of assault with a deadly weapon and felony vandalism and found true the accompanying deadly-weapon-use and out-on-bail enhancement allegations. The court also found Wahidi had attempted to dissuade Khan from testifying, but not by using force or threat of force, and declared the offense a misdemeanor. The court found Wahidi not guilty of the remaining counts.

### 4. *Sentencing*

The court sentenced Wahidi to an aggregate state prison term of two years, consisting of the lower term of two years for aggravated assault and concurrent terms of two years for felony vandalism and one year for attempting to dissuade a witness from testifying. The court imposed and stayed the deadly-weapon-use and out-on-bail enhancements and ordered Wahidi to pay $7,336.81 in victim restitution to Khan.

## DISCUSSION

### 1. *Standard of review*

To assess a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we

review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, italics omitted.)

2. *Substantial Evidence Supports Wahidi's Conviction of Attempting to Dissuade a Witness from Testifying*

Section 136.1, subdivision (a)(2) prohibits "[k]nowingly and maliciously attempt[ing] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." The crime of attempting to dissuade a witness from testifying is a specific intent crime. (*People v. Young* (2005) 34 Cal.4th 1149, 1210.) "Unless the defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts, no crime has been committed under this section." (*People v. McDaniel* (1994) 22 Cal.App.4th 278, 284.) The circumstances in which the defendant's statement is made, not just the statement itself must be considered to determine whether the statement constitutes an attempt to dissuade a witness from testifying. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1343.) If the defendant's actions or statements are ambiguous, but reasonably may be interpreted as intending to achieve the future consequence of dissuading the witness from testifying, the offense has been committed. (*People v. Ford* (1983) 145 Cal.App.3d 985, 989-990.)

4

Wahidi acknowledges having asked Khan to settle the case informally using the Muslim custom of resolving disputes through discussions between affected families. Nonetheless, Wahidi contends his desire for Khan to agree to this Muslim custom was insufficient evidence he intended to circumvent the legal process by persuading Khan not to go to court or to refuse to testify.

As noted above, section 136.1, subdivision (a), requires that the defendant's attempt to prevent or dissuade a victim or witness from giving testimony must be both knowing and malicious. We have no difficulty concluding that there was substantial evidence that Wahidi's attempt to dissuade was knowing. The chronology of events and the timing of the September 25, 2011 conversation at the mosque, the fact that Khan had never seen Wahidi at this mosque until the day before the preliminary hearing, and the fact that Khan understood that Wahidi was asking him not to testify, all support the trial court's finding that Wahidi's attempt was knowing.

Whether Wahidi's attempt was malicious is a closer question. Section 136 defines "malice" for purposes of section 136.1: "'Malice' means an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." There is no substantial evidence that Wahidi intended to "vex, annoy, harm, or injure" Khan when Wahidi approached Khan in the mosque. But the evidence does show that Wahidi intended to "thwart or interfere in any manner with the orderly administration of justice" by convincing Khan not to testify at the preliminary hearing the next day. Under the definition of malice in section 136, Wahidi maliciously attempted to dissuade Khan from testifying.

The problem is that the definition of malice in section 136 appears to write the word "maliciously" out of section 136.1. (See *State Office of Inspector General v. Superior Court* (2010) 189 Cal.App.4th 695, 708 ["an interpretation that reads words out of the statute . . . is counter to the basic rules of statutory construction"]; *Guillen v. Schwarzenegger* (2007) 147 Cal.App.4th 929, 943 ["'[a]n appellate court should be "loathe to construe a statute which has the effect of 'adding' or 'subtracting'

5

language'"].)  Section 136.1, subdivision (a)(2), makes it a crime to attempt to prevent a witness from testifying when the attempt is made with knowledge and malice. Substituting in the definition of malice from section 136, and recognizing that preventing a witness from testifying always interferes in some manner "with the orderly administration of justice," section 136.1, subdivision (a)(2), makes it a crime to attempt to prevent a witness from testifying when the attempt is made with knowledge and with intent to prevent the witness from testifying.

Current sections 136 and 136.1 were enacted together in 1980 as part of Assembly Bill 2909 (Stats. 1980, ch. 686, § 2.1, p. 2076).  Among other revisions, Assembly Bill 2909 changed the criminal intent required from the previous statutory standard of "willfully and unlawfully" to "knowingly and maliciously," and "clarifie[d] existing California law by requiring the act of dissuasion to be done with knowing and malicious intent."  (Assem. Com. on Crim. Justice, Bill Analysis of Assem. Bill No. 2909 (1979-80 Reg. Sess.) as introduced, Apr. 7, 1980, pp. 1, 2; see *Baker v. American Horticulture Supply, Inc.* (2010) 186 Cal.App.4th 1059, 1074 ["[i]n determining legislative intent, we may consider bill analyses prepared by the staff of legislative committees"].)    This bill also added the crime of attempting to prevent or dissuade a witness from attending or testifying at a proceeding.  (Assem. Com. on Crim. Justice, Bill Analysis of Assem. Bill No. 2909, *supra*, at p. 1; see *Review of Selected 1980 Cal. Legislation* (1980-81) 12 Pacific L.J. 235, 330, fns. omitted ["[s]ince unsuccessful attempts at witness intimidation are generally the only attempts reported," section 136.1 was "designed to facilitate prosecution of witness intimidation by making any attempt punishable as part of the substantive crime"].)

The Bill Analysis for the Assembly Committee on Criminal Justice explained that "AB 2909 has been introduced to pattern the California witness intimidation statute from the Model Statute as proposed by the American Bar Association," and attached to the analysis "background material from the A.B.A." (Assem. Com. on Crim. Justice, Bill Analysis of Assem. Bill No. 2909, *supra*, at p. 2; see *Babalola v. Superior Court* (2011)

6

192 Cal.App.4th 948, 956 ["the California Legislature repealed former section 136, and replaced it with sections 136, 136.1, and 136.2 . . . [i]n large part in response to" the ABA report and recommendations]; *Khan v. Los Angeles City Employees' Retirement System* (2010) 187 Cal.App.4th 98, 107 ["'[c]ommittee materials are properly consulted to understand legislative intent, since it is reasonable to infer the legislators considered explanatory materials and shared the understanding expressed in the materials when voting to enact a statute'"]; *Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 792 ["'[c]ommittee reports are often useful in determining the Legislature's intent'"]; *Valley Vista Services, Inc. v. City of Monterey Park* (2004) 118 Cal.App.4th 881, 889 ["[w]hen construing a statute, we may consider its legislative history, including committee and bill reports, and other legislative records"].) The Senate Committee on Judiciary's Report on Assembly Bill 2909 stated that the proposed legislation "would enact a new intimidation of witnesses and victims law patterned after the Model Statute drafted by the ABA Section on Criminal Justice." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2909 (1979-80 Reg. Sess.) as amended April 9, 1980, at pp. 1-2.)

The model statute and accompanying commentary was prepared by the ABA's Section of Criminal Justice, Committee on Victims, and was entitled "Reducing Victim/Witness Intimidation: A Package." The model statute included definitions of the terms "malice," "witness," and "victim," which the California legislature incorporated into original statute with virtually no changes.[3] (Reducing Victim/Witness Intimidation: A Package, at p. 6.) The commentary section on malice stated: "The Committee felt a

_____

[3] The Senate Committee on Judiciary Report on Assembly Bill 2909 noted that the syntax of the ABA model statute was "cumbersome" and that "the drafters found it necessary to define terms such as 'victim' and 'witness' in ways which defy the common sense meanings of the words." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2909, *supra*, at p. 5.) This report suggested that "[a]t some point the bill should be cleaned-up and rewritten in order to smooth out such rough spots." (*Id.* at p. 6.)

need to draw a distinction between persuasion, often rather vigorous, which may be exercised by, for example, a victim or a witness' family members whose motivation for attempting to persuade the person not to testify is legally blameless. Consequently, the malice intended in and defined by the statute should be intentionally and knowingly exercised. The committee grappled considerably with this issue. Some members wished to punish all dissuading but for certain narrowly drawn exemptions, but the majority felt that the statute would potentially punish, for instance, a person casually remarking to a potential witness that he or she should not bother getting involved in the process." (*Id*., at p. 7.)

Thus, the model statute, on which California's statute was based, was designed to apply to persons who attempt to dissuade witnesses from testifying, other than persons such as family members and individuals who make offhand comments about not becoming involved.[4] The statute provided that the prosecution could show malice in either of two ways: proving the traditional meaning of malice (to vex, annoy, harm, or injure) or proving the meaning of malice that is unique to the statute (to thwart or interfere in any manner with the orderly administration of justice). By including the latter definition of malice, the legislature envisioned a relatively broad application of the term. The Assembly Committee on Criminal Justice bill analysis noted: "This new misdemeanor may make criminal attempts to settle misdemeanor violations, certain traffic accidents, etc., among the parties without reporting them to the police. Likewise, a person arrested by a civilian (i.e., a shopkeeper) may face criminal charges by trying to talk the shopkeeper into not calling the police." (Assem. Com. on Crim. Justice, Bill

---

[4] Section 136.1, subdivision (a)(3), added in 1997 (Stats. 1997, ch. 500, § 1), now directly address the issue of family members who attempt to dissuade a witness or victim from testifying not as part of an effort to interfere with the administration of justice, but out of concern for the welfare and safety of the witness or victim. This provision states: "For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice."

Analysis of Assem. Bill No. 2909, *supra*, at p. 2.)  Given this statutory definition of malice, and the legislative history of the origin of the statutory definition, we conclude there was sufficient evidence to support the finding that Wahidi acted maliciously as well as knowingly under section 136.1 in attempting to persuade Khan from testifying at the preliminary hearing the next day.

## DISPOSITION

The judgment is affirmed.  The superior court is directed to prepare and forward to the Department of Corrections and Rehabilitation a corrected abstract of judgment that deletes the $200 probation revocation fine (§ 1202.44) and changes the restitution fine (§ 1202.4) and suspended parole revocation fine (§ 1202.45) from $200 to $240, as orally pronounced.

WOODS, J.

**We concur:**

PERLUSS, P. J.                                                SEGAL, J. [*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.