Filed 9/4/20  P. v. Johnson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEVIN LOUIS JOHNSON, JR.,<br><br>    Defendant and Appellant. | E071455<br><br>(Super.Ct.No. RIF1705386)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Charles Jacob Koosed, Judge.  Affirmed in part, reversed in part, remanded with directions.

Ron R. Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Kevin Louis Johnson, Jr. of preventing or dissuading a witness from testifying (Pen. Code,[1] § 136, subd. (c)(1)) and found that he committed the offense in furtherance of a conspiracy. The trial court found Johnson had a serious felony prior (§ 667, subd. (a)) and seven strike priors (§§ 667, subds (c), (e)(2)(A), 1170.12, subd. (c)(2)). It sentenced Johnson to 30 years to life.

Johnson contends that his conviction for dissuading a witness is not supported by substantial evidence; that the jury instructions did not adequately explain that an agreement alone, without more, does not constitute an overt act in furtherance of a conspiracy; that there was insufficient evidence of either an agreement or an overt act, as required to support the jury's finding that Johnson's acts were in furtherance of a conspiracy; that, under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the trial court erred by imposing various fines and fees without considering his ability to pay; and that remand is required so that the court can exercise its new discretion under Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Sen. Bill 1393). We reject most of these contentions. We agree, however, that the matter should be remanded for the trial court to exercise its new discretion under Sen. Bill 1393 and to consider the parties' arguments and evidence regarding Johnson's ability to pay any imposed fines and fees.

## I. BACKGROUND

In 2017, Johnson was in custody awaiting trial on charges of pandering a minor under 16 (§ 266i) and inducing a minor to commit a commercial sex act (§ 236.1, subd.

---

[1] Further undesignated statutory references are to the Penal Code.

2

(c)). From jail, he made a series of three phone calls that the prosecution contended amounted to attempts to cause the victim (Jane Doe) not to appear at trial to testify against him. The phone calls were recorded and played for the jury.

The first of these "significant" calls was from Johnson to his mother's telephone number on October 20, 2017, the day after a trial readiness conference where the trial was set for November 15, 2017. During the call, he spoke to someone identified as "Booka." Johnson referenced his trial date, and asked Booka to call someone named "Rome" to tell him that "[t]hey lookin' for both of 'em . . . I need them two gone."

In the same call, Johnson asked Booka to conference another person, "Mack," into the call, which she did. Johnson told Mack: "Hey, uh, I need you to do me a big favor." He explained that he was going to "start trial on the 15th of next month." He then asked Mack to "get a message" to "Little Bruh" that "him and his folks gotta . . . move. They lookin' for both of 'em." After some discussion of a plea deal offered by the prosecution, which Johnson had rejected, Mack said "That's crazy." Johnson responded: "You feel me, man? So just tell (unintelligible) whoever—well whoever got the little (unintelligible) the little woopty wap made, put—make sure that's put up, man, for the 15th, man—for sure, for sure. That's the only way I'm . . . ." Mack then asked: "they need her, huh?" Johnson responded in the affirmative, and told Mack "I can beat this case." Later in the call, Johnson elaborated: "I start trial on the 15th, bruh . . . for that whole week, you know what I'm sayin'? If . . . the [girl] don't show up, I'm—I'm out,

3

period.  They gonna drop the whole case against me.  You get what I'm sayin'?"  Mack assured Johnson:  "Well I'm gonna get on that . . . asap."

Later in the same call, Booka came back on the line again, and asked: "Is the thing white?"  Johnson responded:  "No . . . she's Mexican and black."  He confirmed for Booka that they were not talking about "Miss Piggy," and told Booka to "get her real name from Rome."  At trial, a detective testified that Jane Doe appeared African-American, and that her maternal grandmother was Spanish-speaking and had a Hispanic last name.

Johnson called his mother again on November 13, 2017, and asked her to put Booka on the phone, saying "I need her to call Rome, like ASAP."  His mother asked why, and Johnson explained:  "Because, I need to find out that girl in jail or not . . . If that girl's in jail then that mean that they're gonna bring her to my trial, you get what I'm sayin'?"  His mother asked, "What girl?"  Johnson explained:  "The victim, the girl, young—the—the little prostitute girl that I'm gettin' charged for."  When Booka came on the call, Johnson asked if she had called Rome.  When she said she had not, Johnson told her to "call Rome on your phone right now," explaining that he needed to know if "that girl is in jail or not."  Booka reported back that "He said . . . he don't know, but he about to call around right now and see and call me back."  Johnson responded: "And tell him I need to get that information ASAP, you get what I'm sayin'?"  Johnson said that he would call back the next day, and asked: "Please, do whatever it take to find that information for me.  And if she's not in jail, make sure you tell them I start trial on the

4

15th, so I need – you know what I'm sayin'—I need them to take care of business, please." Johnson then emphasized: "Yeah, please tell him—stress—I need you to stress that hard, okay, stretch that hard to Rome. Be like, 'Man, you feel me, what's goin' on, he need to know. He need to know because it's,' see what I'm sayin', I might have to take a deal. I might—you know what I'm sayin, I might just have to take a deal, but I need to know that—I need to know that information, and then if she's not in jail . . . ."

On November 14, 2017, Johnson called his mother again. He explained to his mother, when she objected to the cost of him calling so frequently: "I know, this is—will be my last phone call . . . I told Booka to tell you that I needed to call today to find out if that girl in jail or not." When Booka came to the phone, she told Johnson: "Yeah, you good . . . she's not." Johnson confirmed that Booka had told "him"—apparently, Rome—that the trial was scheduled for the next day; Booka responded in the affirmative. Johnson asked: "He say he know for a fact?" Again, Booka responded in the affirmative, stating: "He knows for a fact, talked to her." After confirming he heard correctly, Johnson then said: "Okay. That's all I need to know. Okay. All right. Um, I'm gonna probably have somebody to tell—if I get out tomorrow, if a—if they—if they drop the charges tomorrow or whatever, I'm probably have somebody call you and just say they gonna, like, KG out so come get him."

Doe did not appear for trial, and law enforcement was unable to locate her, even after the trial was delayed several times.

5

Johnson was charged with one count of dissuading a witness (§ 136.1, subd. (c)(1); count 1).  The information alleged that Johnson committed the offense "in furtherance of a conspiracy."  (See § 136.1, subd. (c)(2).)  It further alleged that Johnson had one serious felony prior (§ 667, subd. (a)) and seven strike priors (§§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)).

The jury returned a guilty verdict on count 1 and found true that he acted in furtherance of a conspiracy.  The trial court found true the prior conviction allegations.  In the interest of justice, the trial court dismissed four of the strike priors.  It sentenced Johnson to 30 years to life, consisting of 25 years to life on count 1, plus a consecutive five years for the serious felony prior.  The trial court also imposed a restitution fine of $300 (§ 1202.4), a parole revocation fine of $300 (§ 1202.45), a criminal conviction assessment of $30 (Gov. Code, § 70373), and a court operations fee of $40 (§ 1465.8).

## II.  DISCUSSION

### A.  *Substantial Evidence of Dissuading*

Johnson contends that the evidence was insufficient to support his conviction for violating section 136.1, asserting that none of his statements during the recorded calls from jail support the conclusion that he intended to prevent or dissuade Doe from appearing at his trial and testifying.  He is incorrect.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the

6

defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*Ibid.*; see also *People v. Thomas* (1992) 2 Cal.4th 489, 514 ["If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."].) "'We do not reweigh evidence or reevaluate a witness's credibility.'" (*People v. Alexander* (2010) 49 Cal.4th 846, 917.)

As relevant here, section 136.1 prohibits "[k]nowingly and maliciously attempt[ing] to prevent or dissuade any witness or victim from attending or giving testimony at any trial . . . ." (§ 136.1, subd. (a)(2).) Doing so is a felony "[w]here the act is in furtherance of a conspiracy."[2] (§ 136.1, subd. (c)(2).) "The crime of attempting to dissuade a witness from testifying is a specific intent crime." (*People v. Wahidi* (2013) 222 Cal.App.4th 802, 806.) "'Unless the defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts, no crime has been committed under this section.'" (*Ibid.*, quoting *People v. McDaniel* (1994) 222 Cal.App.4th 278, 284.) Intent is properly inferred not just from the defendant's statements and actions, but also the surrounding circumstances. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1343.) "If the defendant's actions or statements are

_____

[2] Absent one of the enumerated aggravating circumstances, a violation of section 136.1 is a wobbler, punishable either as a misdemeanor or a felony. (§ 136.1, subd. (b)(1); *People v. McElroy* (2005) 126 Cal.App.4th 874, 880.)

7

ambiguous, but reasonably may be interpreted as intending to achieve the future consequence of [preventing or] dissuading the witness from testifying, the offense has been committed." (*People v. Wahidi*, *supra*, at p. 806.)

Substantial evidence supports the jury's conclusion that Johnson intended to prevent or dissuade Doe from appearing at his trial to testify. Although Johnson often referred to Doe by a variety of epithets, some vulgar, he explained to his mother that his inquiries referenced the "victim, the girl, young—the—the little prostitute girl that I'm getting' charged for." Moreover, Johnson was not just inquiring for information about whether Doe was in custody, and therefore likely to be brought to trial to testify against him, so that he could decide whether he should accept a plea deal or proceed with trial. He affirmatively, albeit obliquely, asked Mack and Rome (through Booka) to ensure that Doe did not appear: to "take care of business" by making sure that she was "put up . . . for the 15th" so that he could "beat this case." Johnson's statements, particularly given their context of calls from jail immediately in advance of trial, are reasonably interpreted as demonstrating his intent to prevent Doe from appearing to testify against him.

In arguing for a different conclusion, Johnson focuses on different meanings that he contends could be derived from out-of-context snippets of the recorded conversations that were the focus of the prosecution, as well as purported ambiguities arising at least in part from the use of oblique references and nonstandard, colloquial language. In context, however, the meaning of Johnson's statements is plain enough. The jury did not need to engage in speculation, or have the assistance of expert testimony regarding Johnson's

8

nonstandard use of language, to come to a conclusion regarding his intent. At most, Johnson shows arguable different interpretations of his statements. That is not enough to justify disturbing the jury's verdict, even if we were inclined to agree with Johnson's interpretations (and we are not so inclined). (See *People v. Bolin*, *supra*, 18 Cal.4th at p. 331; *People v. Thomas*, *supra*, 2 Cal.4th at p. 514.)

B. *Jury Instructions Regarding Conspiracy*

Johnson argues that the trial court erroneously instructed the jury regarding the concept of an overt act in furtherance of a conspiracy, by permitting the jury to find an overt act based on actions that were no more than a solicitation or agreement. We are not persuaded.

The jury was instructed, using a modified version of CALCRIM No. 415, that to prove a conspiracy, the prosecution had to prove, among other things, that a member of the conspiracy committed at least one of four enumerated overt acts in furtherance of the conspiracy. Specifically, the jury was instructed that it had to find that "defendant, or Booka or all of them committed at least one of the following alleged overt acts . . .": (1) "Contacting '[Mack]' to help make sure [Doe] was hidden"; (2) "Contacting Rome to help make sure [Doe] was hidden"; (3) "Calling 'Rome' regarding [Doe's] whereabouts"; and (4) "Contacting 'Rome' to speak to [Doe]." The instruction further defined the term "overt act" to mean "an act by one or more of the members of the conspiracy that is done to help accomplish the agreed upon crime. The overt act must happen after the defendant

9

has agreed to commit the crime.  The overt act must be more than the act of agreeing or planning to commit the crime, but it does not have to be a criminal act itself."

Johnson argues that each of the four enumerated "overt acts" describe no more than a solicitation to Rome and Mack to join the conspiracy, and thus do not qualify as an overt act in furtherance of a conspiracy.  Johnson fails to appreciate, however, that solicitation of additional conspirators may well constitute an overt act in furtherance of a conspiracy, because it "look[s] toward the accomplishment of and manifest[s] an intent to commit the crime."  (*People v. Von Villas* (1992) 11 Cal.App.4th 175, 245.)  Here, as alleged by the prosecution and framed by the instruction at issue, Booka and Johnson conspired to make sure that any witnesses who might testify against Johnson, including Doe, were "gone" when his trial occurred.  The question for the jury was whether either Johnson or Booka took any overt act in furtherance of that goal.  The instructions properly described soliciting Mack and Rome to join the conspiracy and help accomplish that goal as overt acts, sufficient to support the conspiracy allegation against Johnson.

Johnson's claim of instructional error is without merit.

C. *Substantial Evidence of Overt Act*

Johnson contends that there is no evidence of any overt act in support of any conspiracy.  This argument rests, however, on the premise that soliciting Mack or Rome to join Johnson and Booka's conspiracy is insufficient, as a matter of law, to constitute an overt act in furtherance of a conspiracy.  As discussed in subsection B above, that premise is false.  There was ample evidence, in the form of the recorded telephone

10

conversations, that Booka, at the request of Johnson, committed each of the four alleged overt acts in furtherance of the conspiracy.

D. *Substantial Evidence of Agreement to Commit Criminal Act*

Johnson asserts that there is no evidence he entered into any agreement to commit a criminal act, as necessary to support a finding that he acted in furtherance of a conspiracy. Again, however, this argument rests on a false premise that we have already rejected. As discussed in subsection A above, there is ample evidence Johnson intended to prevent or dissuade Doe from appearing at his trial to testify, which is a criminal act. The recordings of Johnson's telephone calls are reasonably interpreted to show that he intended to, and in fact accomplished that goal by enlisting Booka, Mack, and Rome to assist him. Substantial evidence supported not only Johnson's conviction on count 1, but also the jury's true finding on the conspiracy allegation.

E. *Sen. Bill 1393*

Johnson's contends that the matter should be remanded for the trial court to exercise its new discretion to strike the section 667, subdivision (a) enhancement imposed as part of his sentence. The People argue that remand is unnecessary, arguing that it is clear the trial court would not have dismissed the enhancement if it had the authority to do so at the time of sentencing. We conclude that remand is the better approach here.

Effective January 1, 2019, Sen. Bill 1393 amended sections 667, subdivision (a), and 1385, subdivision (b), to allow a court, in its discretion, to strike or dismiss a prior

11

serious felony conviction for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1-2.) Under the versions of these statutes in effect when the trial court sentenced Johnson, the court was required to impose a five-year consecutive term for "any person convicted of a serious felony" (former § 667, subd. (a)), and the court had no discretion "to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667" (former § 1385, subd. (b)).

The People concede, and we agree, that the changes to the law enacted by Sen Bill 1393 apply to judgments, like the one in this case, which were not final on January 1, 2019, when Sen. Bill 1393 went into effect. (See *People v. Stamps* (June 25, 2020) ___P.3d___, 2020 Cal. Lexis 3974, at *15 [so holding].) Nevertheless, "[w]e are not required to remand to allow the court to exercise its discretion if 'the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] enhancement' even if it had the discretion." (*People v. Jones* (2019) 32 Cal.App.5th 267, 272-273.) "The trial court need not have specifically stated at sentencing it would not strike the enhancement if it had the discretion to do so. Rather, we review the trial court's statements and sentencing decisions to infer what its intent would have been." (*Id.* at p. 273.)

Here, as the People emphasize, the trial court denied Johnson's *Romero* motion in part, striking four of his seven strikes, but declining to strike the remaining three because it did not find Johnson to fall outside the spirit of the Three Strikes Law. The Three Strikes Law, however, accounts only for 25 years to life of Johnson's total sentence.

12

Under Sen. Bill 1393, the trial court now has the discretion to choose whether to impose the additional five-year consecutive term for the serious felony prior, even while sentencing Johnson as a third striker, effectively choosing between a sentence of 25 years to life or 30 years to life. We find nothing in the record that clearly establishes what the trial court would have done if it had such discretion at the time of sentencing. The matter therefore must be remanded for the trial court to make that determination. We express no opinion regarding how the trial court should exercise its new discretion.

F. Dueñas *Error*

Johnson argues, based on *Dueñas*, that the trial court violated his constitutional rights by imposing various fines and fees, totaling $670, without considering his ability to pay them. This is an argument he raised for the first time only on appeal.

There is a split in authority regarding whether *Dueñas* was correctly decided. (See, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 326 [disagreeing with *Dueñas*].) The courts of appeal have also divided over whether a defendant's failure to object at sentencing based on inability to pay forfeits the issue. (See, e.g., *People v. Castellano* (2019) 33 Cal.App.5th 485, 489 [no forfeiture because of failure to object]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 [finding issue forfeited].) The California Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted November 13, 2019, S257844, to resolve at least the first of these splits.

Here, however, we need not decide whether *Dueñas* was correctly decided, or whether Johnson forfeited the issue by failing to raise it first in the trial court. The matter

must in any case be remanded for the trial court to determine how to exercise its new discretion under Sen. Bill 1393. In such a circumstance, we find it appropriate that the trial court to be permitted to decide the issue of Johnson's ability to pay in the first instance, if Johnson chooses to contest the issue.

## III. DISPOSITION

The judgment is reversed and the matter is remanded for the limited purpose of permitting the court (1) to determine whether to strike the enhancement under section 667, subdivision (a); (2) if requested, to consider the parties' evidence and arguments regarding Johnson's ability to pay any applicable fine, fee, or assessment; and (3) to resentence Johnson accordingly. In all other respects the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
                                                    J.


We concur:

MILLER _____
          Acting P. J.


SLOUGH _____
                    J.