Filed 5/27/21  P. v. Yu CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEI YU,<br><br>    Defendant and Appellant. | B303116<br><br>(Los Angeles County<br>Super. Ct. No. KA118263) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.

Richard B. Lennon and Michael L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Colleen M. Tiedemann, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted Lei Yu of attempted murder, stalking, and two counts of threatening or intimidating a witness. He challenges convictions for witness intimidation, arguing no evidence demonstrated he harbored the requisite intent. We affirm. Statutory references are to the Penal Code.

I

Yu and Yaju C. married in China in 2016. Domestic violence plagued their marriage; Yu hit Yaju whenever she said something he did not like. In January 2017, Yaju moved to the United States with their child to escape Yu's abuse.

Yu followed her. In October 2017, he forced his way into Yaju's home in Diamond Bar. Yaju suspected he hired private investigators to find her. Yaju allowed Yu to stay in the house because she feared violence if she resisted. Yu began to follow her wherever she went.

Yaju applied for and was granted a restraining order against Yu. She and their daughter left to live in a hotel, then moved to a different home in Diamond Bar in December 2017.

Yu appeared at this new home the day after they moved in. Yaju tried to resist Yu moving in, but he threatened to cause problems at her school. Yaju feared this would jeopardize her student visa and relented. Yaju also continued to fear violence: she always kept her car key in her pocket and her car parked on the street in case she needed suddenly to flee.

In May 2018, Yaju was working as an intern at a preschool. Yu continued to live with her and their daughter at the Diamond Bar house. A roommate also lived with them.

On May 29, 2018, Yaju went to work without Yu following her. On the way home, she stopped at a supermarket and was

running late.  Yu called her twice while she was driving, but she did not pick up.  When she got home and brought the groceries inside, Yu was finishing a meal and "looked very angry."  Yaju tried to explain she was running late because she stopped for groceries.  She ate and then got her purse to return to work.

Yu was very angry, and Yaju had a bad feeling.  She told him: " 'I do not want to argue with you.  I want my freedom.' " Yu said if she wanted to leave, her only choice was to die.  He rushed to the kitchen.  Yaju ran to the front door.

Before Yaju could unlock the door, Yu grabbed her from behind, pushed her to the floor, and began to stab her with a knife "nonstop."

Yaju screamed.  Their roommate heard and came out from her room.  She saw Yu stabbing Yaju and screamed at him to stop.  When Yu looked up at the roommate, Yaju managed to unlock the front door.  The roommate pleaded with Yu to leave and said he would kill Yaju, but Yu continued stabbing.  Yaju threw her purse at Yu and said to take it, all her credit cards and money were inside.  Yu turned around, and Yaju opened the door. Yu grabbed and pulled her, but Yaju rolled through the doorway.

During the attack, Yaju lost sensation in her left leg and hand.  She had no strength to stand or crawl, so she rolled down the slope of the front yard to her car.  She pulled herself up and into her car, using her right hand to move her left leg and arm. Then she drove the car into a nearby intersection and stopped, blocking traffic.  Bystanders called police.  When the police arrived, Yaju warned them not to let her daughter return home from school because her husband was there.  Then she passed out.  She awoke seven hours later in the hospital and remained there for a month.

Soon after police responded to the scene, they searched the area and found Yu "covered in blood" sitting in his car in a nearby parking lot. Yaju's purse and wallet were on the floorboard. They arrested Yu, and two days later prosecutors filed a felony complaint.

Yu stabbed Yaju 46 times during this May 29, 2018 attack. By the time of Yu's trial in October 2019, Yaju had undergone six surgeries and was awaiting three more. A nerve transplant failed to restore sensation in her leg. She had numerous scars, used a crutch and a brace, and for a year visited the hospital daily for physical therapy.

In January 2019, Yaju returned to the Diamond Bar house to pick up her mail. She found three letters from Yu, in Mandarin and in his handwriting. In one letter, Yu said he would send a "mafia style organization" to follow and kill her. In the other, he said he would have someone find and kill her even if she changed her name and moved. Yaju reported the letters to police and told them she believed Yu. She was afraid.

An information charged Yu with attempted murder (§§ 187, subd. (a), 664), stalking (§ 646.9, subd. (a)), and two counts of threatening a witness (§ 136.1, subd. (a)). It also alleged the attempted murder was premeditated (§ 664, subd. (a)) and Yu personally used a knife (§ 12022, subd. (b)(1)). At trial, the prosecution called Yaju and three police officers to testify. The defense called no witnesses.

The jury convicted Yu on all counts and found the allegation true. The court sentenced Yu to 18 years to life in prison.

II

On appeal, Yu challenges only his two convictions for witness intimidation.  (§ 136.1, subd. (a).)  He argues insufficient evidence showed he harbored an intent to dissuade Yaju from testifying when he sent her threatening letters.  The letters themselves were not entered into the record; Yaju testified to their existence and contents at trial.

We review a claim of insufficient evidence to determine whether the record discloses evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87 (*Manibusan*).)  We review the record in the light most favorable to the prosecution and presume in support of the judgment every fact the jury could reasonably deduce from the evidence.  (*Ibid*.)  When more than one inference reasonably can be drawn from the circumstances, we may not substitute our deductions for those of the fact finder.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357–358.)  This standard of review applies to claims involving both direct and circumstantial evidence.  (*Manibusan*, at p. 87.)

A defendant is guilty of violating section 136.1, subdivision (a)(2) when he "[k]nowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial . . . ."  The defendant must have intended specifically to prevent the witness's testimony.  (*People v. Young* (2005) 34 Cal.4th 1149, 1210; *People v. Lyons* (1991) 235 Cal.App.3d 1456, 1461.)  The fact finder considers the circumstances in which the threat is made to determine whether it constitutes an attempt to dissuade a witness's testimony.  (*People v. Wahidi* (2013) 222 Cal.App.4th 802, 806.)  Actions or

statements that are ambiguous but reasonably may be interpreted as an attempt to dissuade can support a conviction. (*Ibid*.; see also *People v. Ford* (1983) 145 Cal.App.3d 985, 989–990.)

The prosecutor presented no direct evidence of Yu's intent in sending Yaju the threatening letters, but circumstantial evidence can support a conviction. (*Manibusan*, *supra*, 58 Cal.4th at p. 87.) We summarize the circumstantial evidence.

Police took Yu into custody the day of the attack. Prosecutors filed a felony charge two days later. While in custody awaiting trial, Yu wrote and mailed Yaju three letters threatening to send a criminal organization or hitman to find and kill her. Yaju discovered and read these letters in January 2019, eight months after the attack and nine months before trial. She reported the letters to police and told them she believed Yu's threats and feared for her safety.

What motivated Yu to write these letters?

In his briefing, Yu emphasizes his years of abuse and attempted murder of Yaju. He reminds us he followed Yaju whenever she left the house and threatened to get her deported if she resisted. When Yaju said she wanted her freedom, Yu told her she would escape him only in death. He tried to make good on this murderous threat.

Yu says that in light of these facts, the *only* reasonable inference is these written threats continued the same pattern of domestic violence against his wife. In other words, he meant either to kill Yaju or to terrorize her as usual, and nothing more. Yu urges us to conclude this cycle of abuse created a rebuttable presumption Yu was "fueled by a desire to cause or inflict fear of

great bodily injury on a domestic partner" rather than "a desire to prevent cooperation in a court case."

Yu provides no citation for the claim prosecutors must overcome a presumably continuous mental state in witness intimidation cases where the defendant has established a pattern of violence against the victim. Instead, he asserts an "inescapable conclusion" that "the letters were a continuation of [Yu's] pattern of threats and abuse toward Yaju."

This conclusion is not inescapable. Indulging all inferences in favor of the judgment, the facts do not show a simple desire to kill or abuse Yaju motivated Yu. If murder is one's motive, it is counterproductive to tip off the victim the mafia is coming.

Yu's pattern of abuse also cuts against his argument on appeal. Yu repeatedly succeeded in coercing Yaju. Twice he arrived unannounced at Yaju's home and forcibly moved himself in—once in disregard of an active restraining order. Both times Yaju acquiesced because she feared Yu and his credible threats. She constantly carried her car key because she feared attack.

In his letters, Yu threatened Yaju while awaiting trial for attempting to murder her. Yaju was one of two witnesses to the attack and the only percipient witness to testify. In closing argument, the prosecutor explained Yu "tr[ied] to instill this fear in her so that she would not participate in the prosecution." Defense counsel's closing consisted solely of a reminder that "it is your duty as jurors to look through each of the factors [in the jury instructions] and see how it applies in this case" and an entreaty to convict only if they had an "abiding conviction" of Yu's guilt. The court properly instructed the jury on the intent element of threatening a witness. We presume jurors follow instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

In this context, the jury found Yu intended to prevent Yaju's testimony. This finding had a rational basis in the evidence.

## DISPOSITION

The judgment is affirmed.


WILEY, J.


We concur:


GRIMES, Acting P. J.


OHTA, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8