Filed 7/5/23  P. v. Garnsey CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL GARNSEY<br><br>        Defendant and Appellant. | A161875<br><br><br>(Solano County<br>Super. Ct. No. FCR351850) |

Michael Garnsey was convicted of mayhem and other offenses after he repeatedly slashed his former girlfriend with a machete.  He contends the court violated his constitutional trial rights by requiring witnesses to wear protective face masks while testifying.  We conclude Garnsey forfeited this claim by failing to raise it at trial.  We also reject his claim that the court violated his rights to due process, effective assistance of counsel, and an impartial jury by requiring prospective jurors to wear face masks during voir dire.

We also find meritless Garnsey's further contentions that his convictions for attempting to dissuade a witness must be reversed due to insufficient evidence and instructional error. However, we remand the case for resentencing in light of a recent amendment to Penal Code section 654.[1]

---

[1] Undesignated statutory citations are to the Penal Code.

# BACKGROUND

In May 2020, Garnsey attacked his girlfriend, Stephanie R., with two machetes, inflicting permanent and disfiguring injuries.

Garnsey was charged with inflicting an injury resulting in a traumatic condition on Stephanie (count 1), assault with a deadly weapon (counts 2, 4), assault by means likely to produce great bodily injury (count 3), and mayhem (count 5). The complaint also alleged enhancements for use of a deadly weapon (counts 1, 3, 5) and infliction of great bodily injury (counts 1, 2, 3, 5). The following month, the district attorney added three additional counts charging Garnsey with knowingly and maliciously attempting to dissuade Stephanie from attending and testifying at trial (counts 6-8).

The jury acquitted Garnsey of one count of assault with a deadly weapon, convicted him on all other counts, and found the enhancements true. The court sentenced him to 15 years in prison and imposed and stayed a $10,000 restitution fine.

# DISCUSSION

## A.

Garnsey was tried in October 2020, in the midst of the COVID-19 pandemic and before vaccines were widely available. The trial court required everyone in the courtroom to wear a protective face mask at all times. Garnsey contends the masking order violated his due process and confrontation rights and that, at a minimum, the court was constitutionally required to inquire into and make findings on alternative safety measures such as clear masks or face shields or plexiglass barriers before requiring testifying witnesses to wear opaque masks.

The arguments fail because Garnsey never objected to the mask protocol or requested alternatives. The general masking order then in effect in the Solano County Superior Court

explicitly gave the trial judge the discretion to "require an individual to remove a mask as needed to facilitate fair and effective courtroom proceedings, as long as six feet of social distance can be maintained." (Presiding Judge Donna L. Stashyn, *Mandatory Wearing of Face Masks in Enclosed Public Spaces of the Solano County Courthouses,* Misc. No. M-15-2020, p. 3 (eff. June 18, 2020).)[2] Nothing in the record indicates the judge presiding over Garnsey's trial would have refused to consider exercising that discretion if asked. If Garnsey thought that the use of masks violated his rights and that there were better alternatives, he should have said so. The arguments are forfeited. (*People v. Arredondo* (2019) 8 Cal.5th 694, 710.)

We reject Garnsey's related claim of ineffective assistance of counsel because the evidence of his guilt was overwhelming. In light of that evidence, there is no reasonable probability of a different outcome had his counsel asked the court to consider alternatives to opaque masks. (See *Strickland v. Washington* (1984) 466 U.S. 668, 697; *People v. Price* (1991) 1 Cal.4th 324, 440, superseded by statute on another ground as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161.)

**B.**

Garnsey next contends the court violated his constitutional rights to due process, effective assistance of counsel, and an impartial jury by requiring prospective jurors to wear masks during voir dire. Again, as with his confrontation claim, Garnsey forfeited the argument by failing to object at trial. In any event, it is meritless.

We may not disturb the trial court's exercise of its broad discretion over voir dire unless its ruling rendered the resulting trial fundamentally unfair. (*People v. Carter* (2005) 36 Cal.4th

---

[2] We take judicial notice of this order pursuant to Evidence Code, section 452, subdivisions (d) and (e).

1215, 1250.)  The ruling here had no such effect.  While no published California appellate opinion has yet addressed whether requiring masking during voir dire infringes on the defendant's constitutional rights, multiple federal courts that have considered the question have reached the same conclusion: the constitution does not require that a defendant can see a potential juror's unobstructed nose and mouth during voir dire.  (See, e.g., *United States v. Ayala-Vieyra* (6th Cir., Jan. 21, 2022, 21-1177) 2022 U.S.App.LEXIS 1783 [*13] & fn. 1 [citing numerous cases]; *United States v. Crittenden* (M.D. Georgia, Aug. 21, 2020, 4:20-CR-7 (CDL) 2020 U.S.Dist.LEXIS 151950 [*22]-[*25].)  Garnsey cites no contrary authority.

## C.

Garnsey was charged with three counts of attempting to dissuade a witness in violation of section 136.1, subdivision (a)(2) based on unspecified communications he made from jail on the 7th, 9th, and 12th of June 2020.  He contends his convictions for the June 9 (count 6) and June 7 (count 7) offenses must be reversed due to insufficient evidence, and that instructional error requires reversal on all three counts.  These contentions, too, are meritless.

## 1.

We turn first to Garnsey's contention that there was insufficient evidence to support his convictions on counts 6 and 7.

Under section 136.1, subdivision (a)(2), it is a crime to "[k]nowingly and maliciously attempt[] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law."  To convict, the prosecution must prove the defendant (1) intended to prevent or dissuade a witness from testifying, and (2) performed an act beyond mere preparation that shows he was putting his plan into action.  (*People v. Foster* (2007) 155 Cal.App.4th 331, 335

4

(*Foster*).)  When the intent is clearly shown, any slight act in furtherance of it suffices to complete the crime.  (*Id.* at p. 336.)

The circumstances of a communication as well as the statement itself are relevant to whether it constitutes an attempt to discourage or prevent a witness from testifying.  (*People v. Wahidi* (2013) 222 Cal.App.4th 802, 806 (*Wahidi*).)  Even an ambiguous statement is sufficient if it reasonably may be interpreted as intended to dissuade a witness.  (*Ibid.*)  We review the evidence in the light most favorable to the judgment below, presuming in support of the judgment the existence of every fact the jury could reasonably have deduced from it, and reverse only if there is no substantial evidence to support the judgment under any possible hypothesis.  (*People v. Sanford* (2017) 11 Cal.App.5th 84, 91.)

On three different days while in pretrial custody, Garnsey wrote to and called friends or relatives asking them to tell Stephanie to stay away from the trial.  On June 7, 2020, he called his friend Will.  Will told Garnsey he had encouraged Stephanie to come to court to say positive things about him.  Garnsey responded, "Yeah . . . it's not, if you see her tell her not to go.  Tell her not to go."  He explained, "look, if she, if she doesn't come to court, bro, uh, they're gonna drop the case."

On June 9, Garnsey called his stepfather, Ron, and said, "Hey, um, just have Will or something show up to court or something like that, you know, in case, um, you know, people show up in the lobby, he can kinda scare 'em away. (laughter)."  Garnsey then gave Ron the date and time for his court appearance.  At trial, Garnsey testified he did this because other inmates told him "it was better if people didn't show up."  He added that "it was more joking, even though it was kind of serious."

Also on June 9, Garnsey wrote and addressed two letters that were intercepted and redacted by correctional officers.  He

5

placed the letters in a single envelope addressed to both recipients, along with other notes dated between June 10 and June 13.

One letter was to Leslie, the mother of two of Garnsey's children. He wrote, "My lawyer said I'm looking at [15 years] if she shows up so now I have to play the call every body game and make sure the bitch don't come other wise [*sic*] its bye doughy."[3] He added, "I really hope that bitch don't come to court tho." Garnsey admitted at trial that he was referring to Stephanie.

The second June 9 letter was to Garnsey's sister, Liz. He wrote, "My lawyer said I'm going to lose @ my prelim and shit. So I'm going to [trial]. Just make sure she doesn't show up or I'm looking @ [15 years] which I'm not ready for." Garnsey provided Stephanie's phone number and asked Liz to call her and make sure she would not come to court. On cross-examination, he acknowledged that this was to make sure Stephanie stayed away. He admitted he wrote these letters because other inmates told him he had "a chance of getting out" if "people don't come to court."

On June 12, Garnsey called Ron again, gave him Stephanie's phone number, and asked him to call her to "make sure that she doesn't come to court." He said, "Every time I call her it just goes straight to the answering machine, so I don't know if she's just got me blocked or if she's got her phone turned off or what. . . But I just wanna, I just wanna double make sure you know what I mean 'cause, um, 15 years is a long time."

This evidence amply supports the convictions on counts 6 and 7. As we understand his argument, Garnsey does not seriously challenge the sufficiency of the evidence that he harbored the specific intent to prevent or dissuade a witness or victim from testifying. (See *Foster, supra,* 155 Cal.App.4th at p.

---

[3] Garnsey went by the nickname "Dough Boy" or "Doughy."

335.)  Rather, he contends the evidence falls short of proving that he " 'perform[ed] an act . . . "beyond mere preparation." ' " (*Ibid.*)

The contention is specious.  On both dates in question, Garnsey wrote to or called friends or relatives and asked them to tell Stephanie not to come to court.  Just as in *Foster,* this went beyond mere preparation; Garnsey "put his 'plan into action' " by taking concrete steps to convey the message he wanted its recipients to deliver to Stephanie.  (*Foster, supra,* 155 Cal.App.4th at p. 336.)  Notwithstanding that these attempts proved unsuccessful, Garnsey "did everything necessary" to ensure his message was delivered.  (See *ibid.*)  No more is required for conviction.  (*Ibid.*)

Garnsey protests that his June 7 call fell short of attempted witness dissuasion because he "expressed himself conditionally when he asked Will to tell [Stephanie] not to come to court only if Will happened to see her," and neither gave Will her number nor asked him to affirmatively seek her out.  This misses the point.  Garnsey indisputably asked Will to tell Stephanie not to come to court.  Regardless of whether he also provided Stephanie's phone number or told Will to track her down, he conveyed the message he wanted Will to give her.  That was sufficient, particularly given the overwhelming evidence of Garnsey's plan, as he himself described it, to "call everybody . . . and make sure the bitch don't come."  " ' [[W]henever] the design of a person to commit a crime is clearly shown, slight acts done in furtherance of that design will constitute an attempt, and the courts should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime.' " (*People v. Memro* (1985) 38 Cal.3d 658, 698, superseded by statute on another ground as stated in *Riske v. Superior Court* (2016) 6 Cal.App.5th 647, 659-660; see also *Wahidi, supra,* 222 Cal.App.4th at p. 806.)

7

Garnsey's arguments about his June 9 calls to Ron and letters to Leslie and Liz are no more persuasive. He contends that asking Ron to have Will show up to court to "scare" unnamed people away was insufficient because he did not specifically name Stephanie. We disagree. In the context of Garnsey's multiple calls and letters, let alone his admission at trial that his June 9 letters referred to Stephanie, the jury could reasonably find his aim was to prevent her from testifying. (See *Wahidi, supra,* 222 Cal.App.4th at p. 806 [finder of fact may consider the surrounding circumstances in determining whether statement constitutes an attempt to dissuade a witness from testifying].) Garnsey claims he was merely joking, but the jury reasonably disagreed.

Garnsey next argues his June 9 letters to Liz and Leslie are insufficient to prove he committed an attempt offense on that day without evidence that he provided them to correctional officers for mailing that same day. In his view, writing the letters was "an act of 'mere preparation' " that did not amount to attempted dissuasion until he took steps to put them in the mail. Even if correct—a point we need not decide—the argument is immaterial. Garnsey's June 9 phone call to Ron, in the context of the letters written (even if not mailed) the same day, amply establishes the completed offense.

## 2.

Garnsey's claim of instructional error is also unpersuasive.

Without objection, the court instructed the jury with CALCRIM No. 2622 that the prosecutor was required to prove "the defendant maliciously tried to prevent or tried to discourage [Stephanie] from attending or giving testimony at trial proceeding or inquiry authorized by law. [Stephanie] was . . . a crime victim, and the defendant knew he was trying to prevent or trying to discourage [Stephanie] from attending or giving testimony at a trial and intended to do so."

8

Garnsey asserts this was insufficient. Relying on the bench notes for the pattern instruction on attempt (CALCRIM No. 460), he maintains the court was required sua sponte to instruct the jury on the general principles of attempt crimes, including the requirement that he took a direct but ineffective step toward committing the crime beyond planning or preparation. (See *People v. Townsel* (2016) 63 Cal.4th 25, 58 [trial court must instruct on general principles of law relevant to the issues raised by the evidence]; § 21a ["[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission"].)

The People maintain the court was not required to elaborate on CALCRIM No. 2622 in this way without a request because instructing the jury it had to find Garnsey "tried" to prevent or discourage a witness from testifying obviated any risk it would convict him without a showing that he had taken some direct step to put his plan in motion. " '[T]ried' is a commonly understood term, and the trial court thus had no *sua sponte* duty to clarify what was meant by that word." Further, the jury was also instructed with CALCRIM Nos. 251 and 252 that the offense requires proof of both wrongful intent and a prohibited *act*. From this, they maintain, "the jury would have logically and reasonably concluded it needed to find [Garnsey] performed some act in furtherance of his specific intent."

We need not decide whether the court was required to instruct on the elements of attempt because, assuming arguendo that it was, any error was harmless. *People v. Cain* (1995) 10 Cal.4th 1, 44, is analogous. There the trial court instructed the jury on the elements of an attempted rape special circumstance, but not on the elements of attempt. The Supreme Court found the omission was harmless beyond a reasonable doubt: "[I]nsofar as relevant here [the pattern instruction on the elements of attempt] merely restates the common meaning of 'attempt.' To

9

attempt an act is to 'try' or 'endeavor to do or perform' the act. [Citation.] Defendant could not 'try' to rape [the victim] without intending to do so and doing an act toward the rape's commission. In finding defendant attempted or tried to rape [the victim], the jury thus necessarily considered and found to be true" the elements set forth in the pattern instruction on attempt.[4] (*Ibid*.; see also *People v. Lynch* (2010) 50 Cal.4th 693, 763 [following *People v. Cain* where jury was instructed it had to find the defendant committed murder during commission or attempted commission of a robbery].) The Court's reasoning applies with equal force here.

In any event, the omission here could not conceivably have affected the verdict in light of the overwhelming evidence that Garnsey did more than mere planning or preparation; indeed, he acknowledged at trial that he wrote and addressed the letters and made the phone calls that provided the basis for the attempted witness dissuasion counts. Having assessed and soundly rejected his challenge to the evidence of those acts, we have no difficulty concluding the jurors would have convicted Garnsey if instructed with CALCRIM No. 460. If the omission was error, it was harmless beyond a reasonable doubt. (See *Neder v. United States* (1999) 527 U.S. 1, 15-16 [harmless beyond a reasonable doubt standard for failure to instruct on an element of offense].)

## D.

Effective January 1, 2022, the Legislature amended section 654 by removing the requirement that a defendant be punished under the provision providing for the longest term of imprisonment and granting the trial court discretion to impose

---

[4] The omitted instruction at issue in *People v. Cain, supra,* 10 Cal.4th 1 was CALJIC No. 6.00 (*Id.* at p. 44), which effectively mirrors the language of CALCRIM No. 460.

punishment under any applicable provision.  (Assem. Bill No. 518 (2021-2022 Reg. Sess.), Stats. 2021, ch. 441, § 1.)  Because Garnsey's case is not final, the parties correctly agree that this change in the law applies retroactively under *In re Estrada* (1965) 63 Cal.2d 740 and requires remand for resentencing pursuant to section 654 as amended.  Garnsey concedes that, because the full resentencing rule applies upon remand (see *People v. Buycks* (2018) 5 Cal.5th 857, 893-894), his additional contention that trial counsel rendered ineffective assistance by failing to object to a $10,000 restitution fine is now moot.

## DISPOSITION

The case is remanded to the trial court for resentencing.  In all other respects the judgment is affirmed.

11

_____

BURNS, J.

We concur:

_____

SIMONS, ACTING P.J.

_____

LANGHORNE, J.*

A161875

* Judge of the Napa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.